# BULLINGTON *v.* MISSOURI

No. 79-6740.   Argued January 14, 1981—Decided May 4, 1981

BLACKMUN, J., delivered the opinion of the Court, in which BRENNAN, STEWART, MARSHALL, and STEVENS, JJ., joined. POWELL, J., filed a dissenting opinion, in which BURGER, C. J., and WHITE and REHNQUIST, JJ., joined, *post,* p. 447.

*Richard H. Sindel* argued the cause for petitioner. With him on the brief was *Gail Gaus.*

*James J. Cook* argued the cause and filed a brief for respondent.

JUSTICE BLACKMUN delivered the opinion of the Court.

*Stroud* v. *United States,* 251 U. S. 15 (1919), concerned a defendant who was convicted of first-degree murder and sen-

tenced to life imprisonment, and who then obtained, upon confession of error by the Solicitor General, a reversal of his conviction and a new trial. This Court, by a unanimous vote in that case, held that the Double Jeopardy Clause of the Fifth Amendment [1] did not bar the imposition of the death penalty when Stroud at his new trial was again convicted.

The issue in the present case is whether the reasoning of *Stroud* is also to apply under a system where a jury's sentencing decision is made at a bifurcated proceeding's second stage at which the prosecution has the burden of proving certain elements beyond a reasonable doubt before the death penalty may be imposed.

## I

Missouri law provides two, and only two, possible sentences for a defendant convicted of capital murder: [2] (a) death, or (b) life imprisonment without eligibility for probation or parole for 50 years. Mo. Rev. Stat. § 565.008.1 (1978). [3]

Like most death penalty legislation enacted after this Court's decision in *Furman* v. *Georgia,* 408 U. S. 238 (1972),

---

[1] ". . . nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."

[2] The definition of capital murder in Missouri is set forth in Mo. Rev. Stat. § 565.001 (1978):

"Any person who unlawfully, willfully, knowingly, deliberately, and with premeditation kills or causes the killing of another human being is guilty of the offense of capital murder."

[3] Section 565.008.1 reads:

"Persons convicted of the offense of capital murder shall, if the judge or jury so recommends after complying with the provisions of sections 565.006 and 565.012, be punished by death. If the judge or jury does not recommend the imposition of the death penalty on a finding of guilty of capital murder, the convicted person shall be punished by imprisonment by the division of corrections during his natural life and shall not be eligible for probation or parole until he has served a minimum of fifty years of his sentence."

the Missouri statutes contain substantive standards to guide the discretion of the sentencer. The statutes also afford procedural safeguards to the convicted defendant. Section 565.006 provides that the trial court shall conduct a separate presentence hearing for the defendant who is convicted by a jury of capital murder.[4] The hearing must be held before

---

[4] At all relevant times, § 565.006 read in pertinent part:

"1. At the conclusion of all trials upon an indictment or information for capital murder heard by a jury, and after argument of counsel and proper charge from the court, the jury shall retire to consider a verdict of guilty or not guilty without any consideration of punishment, and by their verdict ascertain, whether the defendant is guilty of capital murder, murder in the first degree, murder in the second degree, manslaughter, or is not guilty of any offense. . . .

"2. Where the jury . . . returns a verdict or finding of guilty as provided in subsection 1 of this section, the court shall resume the trial and conduct a presentence hearing before the jury . . . at which time the only isssue shall be the determination of the punishment to be imposed. In such hearing, subject to the laws of evidence, the jury . . . shall hear additional evidence in extenuation, mitigation, and aggravation of punishment, including the record of any prior criminal convictions and pleas of guilty or pleas of nolo contendere of the defendant, or the absence of any such prior criminal convictions and pleas. Only such evidence in aggravation as the prosecution has made known to the defendant prior to his trial shall be admissible. The jury . . . shall also hear argument by the defendant or his counsel and the prosecuting attorney regarding the punishment to be imposed. The prosecuting attorney shall open and the defendant shall conclude the argument to the jury . . . . Upon conclusion of the evidence and arguments, the judge shall give the jury appropriate instructions and the jury shall retire to determine the punishment to be imposed. In capital murder cases in which the death penalty may be imposed by a jury . . . the additional procedure provided in section 565.012 shall be followed. The jury . . . shall fix a sentence within the limits prescribed by law. The judge shall impose the sentence fixed by the jury . . . . If the jury cannot, within a reasonable time, agree to the punishment, the judge shall impose sentence within the limits of the law; except that, the judge shall in no instance impose the death penalty when, in cases tried by a jury, the jury cannot agree upon the punishment.

"3. If the trial court is reversed on appeal because of error only in the

the same jury[5] that found the defendant guilty, and "additional evidence in extenuation, mitigation, and aggravation of punishment" shall be heard. "Only such evidence in aggravation as the prosecution has made known to the defendant prior to his trial shall be admissible." The jury must consider whether the evidence shows that there exist any of the 10[6] aggravating circumstances or the 7 mitigating circumstances specified by the statute, see §§ 565.012.2 and 565.012.3; whether any other mitigating or aggravating circumstances authorized by law exist; whether any aggravating circumstances that do exist are sufficient to warrant the imposition of the death penalty; and whether any mitigating circumstances that exist outweigh the aggravating circumstances. § 565.012.1. A jury that imposes the death penalty must designate in writing the aggravating circumstance or circumstances that it finds beyond a reasonable doubt. § 565.012.4. It also must be convinced beyond a reasonable doubt that any aggravating circumstance or circumstances that it finds to exist are sufficient to warrant the imposition of the death penalty. Missouri Approved Instructions—Criminal (MAI–Cr) § 15.42 (1979). A Missouri jury is instructed that it is not compelled to impose the death

presentence hearing, the new trial which may be ordered shall apply only to the issue of punishment."

The statute was amended by 1979 Mo. Laws H. B. 251, but the amendment does not affect the present case.

[5] Because the petitioner in this case was sentenced by a jury at his first trial, we describe only Missouri's procedure for imposition of the death penalty by a jury.

[6] Section 565.012.2 was amended in 1980 to provide two additional specified aggravating circumstances. Those added were:

"(11) The capital murder was committed while the defendant was engaged in the perpetration or in the attempt to perpetrate the felony of rape or forcible rape or the felony of sodomy or forcible sodomy;

"(12) The capital murder was committed by the defendant for the purpose of preventing the person killed from testifying in any judicial proceeding." Mo. Rev. Stat. §§ 565.012.2 (11) and (12) (Supp. 1980).

penalty, even if it decides that a sufficient aggravating circumstance or circumstances exist and that it or they are not outweighed by any mitigating circumstance or circumstances. MAI–Cr. § 15.46. A jury's decision to impose the death penalty must be unanimous. If the jury is unable to agree, the defendant receives the alternative sentence of life imprisonment described above. § 565.006.2; MAI–Cr. § 15.48.

## II

In December 1977, petitioner Robert Bullington was indicted in St. Louis County, Mo., for capital murder and other crimes arising out of the abduction of a young woman and her subsequent death by drowning.[7]

The Circuit Court of St. Louis County granted petitioner's pretrial motion for a change of venue to Jackson County in the western part of the State. The prosecution, by letter, informed the defense that the State would seek the death penalty if the jury convicted the defendant of capital murder. App. 12. The letter-notice stated that the prosecution would present evidence of two aggravating circumstances specified by the statute: that "[t]he offense was committed by a person . . . who has a substantial history of serious assaultive criminal convictions," § 565.012.2 (1), and that "[t]he offense was outrageously or wantonly vile, horrible or inhuman in that it involved torture, or depravity of mind," § 565.012.2 (7).

At the guilt-or-innocence phase of petitioner's trial, the jury returned a verdict of guilty of capital murder. App. 21. On the following day, the trial court proceeded to hold the presentence hearing required by § 565.006.2. Evidence submitted by the prosecution was received. None was offered by the defense. After argument by counsel, instructions from the judge, and deliberation, the jury returned its

---

[7] Petitioner also was charged with the state crimes of kidnaping, armed criminal action, burglary, and flourishing a dangerous and deadly weapon. At his trial, petitioner was found guilty of all these charges.

additional verdict fixing petitioner's punishment not at death, but at imprisonment for life without eligibility for probation or parole for 50 years. App. 27.

Petitioner then moved, on various grounds, for judgment of acquittal or in the alternative for a new trial. While that motion was pending, *Duren* v. *Missouri*, 439 U. S. 357 (1979), was decided. In that case this Court held that Missouri's constitutional and statutory provisions allowing women to claim automatic exemption from jury service deprived a defendant of his Sixth and Fourteenth Amendments right to a jury drawn from a fair cross-section of the community. The trial court overruled petitioner's motion for acquittal but, relying upon *Duren*, granted his motion for a new trial. App. 44.

Soon thereafter, the prosecution served and filed a formal "Notice of Evidence in Aggravation," stating that it intended again to seek the death penalty. The notice specified the same aggravating circumstances the State sought to prove at the first trial, see also Tr. of Oral Arg. 36, and asserted that it would introduce the evidence that was previously disclosed to defense counsel. App. 45–46. The defense moved to strike the notice, *id.*, at 47, arguing that the Double Jeopardy Clause of the Fifth Amendment (as made applicable to the States through the Fourteenth Amendment, *Benton* v. *Maryland*, 395 U. S. 784, 794 (1969)) barred the imposition of the penalty of death when the first jury had declined to impose the death sentence.

The trial court announced that it would grant that motion and would not permit the State to seek the death penalty. Before the court issued a formal order to this effect, the prosecution sought a writ of prohibition or mandamus from the Missouri Court of Appeals for the Western District. After granting a temporary "stop order," App. 56, the Court of Appeals without opinion denied the State's request and dissolved the stop order. *Id.*, at 57. The Supreme Court of Missouri, however, granted the prosecution's motion for

transfer of the case to that court and issued a preliminary writ of prohibition. After argument, the court, sitting en banc and by a divided vote, sustained the State's position and made the writ absolute. *State ex rel. Westfall* v. *Mason,* 594 S. W. 2d 908 (1980). It held that neither the Double Jeopardy Clause, nor the Eighth Amendment, nor the Due Process Clause barred the imposition of the death penalty upon petitioner at his new trial, and that allowing the prosecution to seek capital punishment would not impermissibly chill a defendant's effort to seek redress for any constitutional violation committed at his initial trial.

We granted certiorari, 449 U. S. 819 (1980),[8] in order to consider the important issues raised by petitioner regarding the administration of the death penalty.[9]

## III

It is well established that the Double Jeopardy Clause forbids the retrial of a defendant who has been *acquitted* of the crime charged. *United States* v. *DiFrancesco,* 449 U. S. 117, 129–130 (1980); *Burks* v. *United States,* 437 U. S. 1, 16 (1978);

---

[8] Although further proceedings are to take place in state court, the judgment rejecting petitioner's double jeopardy claim is "final" within the meaning of the jurisdictional statute, 28 U. S. C. § 1257. *Harris* v. *Washington,* 404 U. S. 55 (1971). See *Abney* v. *United States,* 431 U. S. 651 (1977).

[9] Subsequent to this Court's decisions in *Furman* v. *Georgia,* 408 U. S. 238 (1972), and *Gregg* v. *Georgia,* 428 U. S. 153 (1976), courts of at least two States have concluded that a defendant originally sentenced to life imprisonment may not be sentenced to death upon retrial after reversal of his original conviction. The Texas Court of Criminal Appeals has relied upon this Court's cases construing the Double Jeopardy Clause. *Sanne* v. *State,* 609 S. W. 2d 762, 766–767 (1980); *Brasfield* v. *State,* 600 S. W. 2d 288, 298 (1980). The Supreme Court of Georgia has concluded that the imposition of a death sentence in these circumstances would violate the state-law requirement, Ga. Code § 27–2537 (c)(3) (1979), that the sentence not be " 'excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.' " *Ward* v. *State,* 239 Ga. 205, 208–209, 236 S. E. 2d 365, 368 (1977).

*United States* v. *Martin Linen Supply Co.*, 430 U. S. 564, 571 (1977); *Fong Foo* v. *United States,* 369 U. S. 141, 143 (1962); *Green* v. *United States,* 355 U. S. 184 (1957). This Court, however, has resisted attempts to extend that principle to sentencing. The imposition of a particular sentence usually is not regarded as an "acquittal" of any more severe sentence that could have been imposed. The Court generally has concluded, therefore, that the Double Jeopardy Clause imposes no absolute prohibition against the imposition of a harsher sentence at retrial after a defendant has succeeded in having his original conviction set aside. See *North Carolina* v. *Pearce,* 395 U. S. 711 (1969). See also *United States* v. *DiFrancesco,* 449 U. S., at 133, 137–138; *Chaffin* v. *Stynchcombe,* 412 U. S. 17, 23–24 (1973); *Stroud* v. *United States,* 251 U. S. 15 (1919).

The procedure that resulted in the imposition of the sentence of life imprisonment upon petitioner Bullington at his first trial, however, differs significantly from those employed in any of the Court's cases where the Double Jeopardy Clause has been held inapplicable to sentencing. The jury in this case was not given unbounded discretion to select an appropriate punishment from a wide range authorized by statute. Rather, a separate hearing was required and was held, and the jury was presented both a choice between two alternatives and standards to guide the making of that choice. Nor did the prosecution simply recommend what it felt to be an appropriate punishment. It undertook the burden of establishing certain facts beyond a reasonable doubt in its quest to obtain the harsher of the two alternative verdicts. The presentence hearing resembled and, indeed, in all relevant respects was like the immediately preceding trial on the issue of guilt or innocence. It was itself a trial on the issue of punishment so precisely defined by the Missouri statutes.[10]

---

[10] At the statutorily prescribed presentence hearing, counsel make opening statements, testimony is taken, evidence is introduced, the jury is instructed, and final arguments are made. The jury then deliberates and

In contrast, the sentencing procedures considered in the Court's previous cases did not have the hallmarks of the trial on guilt or innocence. In *Pearce, Chaffin,* and *Stroud,* there was no separate sentencing proceeding at which the prosecution was required to prove—beyond a reasonable doubt or otherwise—additional facts in order to justify the particular sentence. In each of those cases, moreover, the sentencer's discretion was essentially unfettered. In *Stroud,* no standards had been enacted to guide the jury's discretion.[11] In *Pearce,* the judge had a wide range of punishments from which to choose with no explicit standards imposed to guide him.[12] And in *Chaffin,* the discretion given to the jury was extremely broad. That defendant, convicted in Georgia of

returns its formal punishment verdict. § 565.006.2. See n. 4, *supra.* All these steps were taken at petitioner's presentence hearing following his first trial.

We think it not without some significance that the pertinent Missouri statute itself speaks specifically of the presentence hearing in terms of a continuing "trial." Section 565.006.2 states that after the verdict of guilty of capital murder is returned, "the court shall *resume the trial* and conduct a presentence hearing." (Emphasis added.)

[11] In *Stroud,* the relevant statute provided: "Every person guilty of murder in the first degree shall suffer death," but "the jury may qualify their verdict by adding thereto 'without capital punishment;' and whenever the jury shall return a verdict qualified as aforesaid, the person convicted shall be sentenced to imprisonment for life." Act of Mar. 4, 1909, §§ 275, 330, 35 Stat. 1143, 1152, codified currently as 18 U. S. C. § 1111 (b).

At Stroud's retrial, the court essentially repeated the language of this statute to the jury, giving it no further guidance as to the appropriate penalty. Record in *Stroud* v. *United States,* O. T. 1919, No. 276, p. 472. At the previous trial, the judge had told the jury that he would not "pretend to tell you the various considerations that come into determining that question [of the proper sentence]." Record in *Stroud* v. *United States,* O. T. 1917, No. 694, p. 177.

[12] Pearce was convicted of assault with intent to commit rape, a state crime punishable by a prison term of between 1 and 15 years. N. C. Gen. Stat. § 14–22 (1969), repealed by 1979 N. C. Sess. Laws, ch. 682, § 7, and replaced.

robbery, could have been sentenced to death, to life imprisonment, or to a prison term of between 4 and 20 years. 412 U. S., at 18, and n. 1. The statute contained no standards to guide the jury's exercise of its discretion.[13]

In only one prior case, *United States* v. *DiFrancesco,* has this Court considered a separate or bifurcated sentencing procedure at which it was necessary for the prosecution to prove additional facts. The federal statute under consideration there, the "dangerous special offender" provision of the Organized Crime Control Act of 1970, 18 U. S. C. §§ 3575 and 3576, requires a separate presentence hearing. The Government must prove the additional fact that the defendant is a "dangerous special offender," as defined in the statute, in order for the court to impose an enhanced sentence. But there are highly pertinent differences between the Missouri procedures controlling the present case and those found constitutional in *DiFrancesco.* The federal procedures at issue in *DiFrancesco* include appellate review of a sentence "on the record of the sentencing court," § 3576, not a *de novo* proceeding that gives the Government the opportunity to convince a second factfinder of its view of the facts.[14] Moreover, the choice presented to the federal judge under § 3575 is far broader than that faced by the state jury at the present petitioner's trial. Bullington's Missouri jury was given— and under the State's statutes could be given—only two choices, death or life imprisonment. On the other hand, if

---

[13] In discussing the usual attributes of jury sentencing, the Court in *Chaffin* observed: "Normally, there would be no way for a jury to place on the record the reasons for its collective sentencing determination, and ordinarily the resentencing jury would not be informed of any conduct of the accused unless relevant to the question of guilt." 412 U. S., at 28, n. 15. This starkly illustrates the significant difference between the sentencing procedure in that case and the procedure now required by Missouri in a capital murder case.

[14] The statute authorizes "review of whether the procedure employed was lawful, the findings made were clearly erroneous, or the sentencing court's discretion was abused." 18 U. S. C. § 3576.

the Federal Government proves that a person convicted of a felony is a dangerous special offender, the judge may sentence that person to "an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise authorized by law for such felony." § 3575 (b). Finally, although the statute requires the Government to prove the additional fact that the defendant is a "dangerous special offender," it need do so only by a preponderance of the evidence. *Ibid.* This stands in contrast to the reasonable-doubt standard of the Missouri statute, the same standard required to be used at the trial on the issue of guilt or innocence. *Jackson* v. *Virginia,* 443 U. S. 307 (1979); *In re Winship,* 397 U. S. 358 (1970). The State's use of this standard indicates that, as has been said generally of the criminal case, "the interests of the defendant are of such magnitude that . . . they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment. . . . [O]ur society imposes almost the entire risk of error upon itself." *Addington* v. *Texas,* 441 U. S. 418, 423–424 (1979).

## IV

These procedural differences become important when the underlying rationale of the cases is considered. The State here relies principally upon *North Carolina* v. *Pearce.*[15] The

---

[15] The other cases that concern the application of the Double Jeopardy Clause to sentencing do not add significantly to the State's argument. *Chaffin* relies primarily upon *Pearce.* See 412 U. S., at 23–24. *Stroud* states only that "[t]he fact that the jury may thus mitigate the punishment to imprisonment for life did not render the conviction less than one for first degree murder." 251 U. S., at 18. *Stroud*'s jury was not required to find any facts in addition to those necessary for a conviction for first-degree murder in order to sentence him to death.

*DiFrancesco* relies upon "the history of sentencing practices, . . . the pertinent rulings of this Court, [and] considerations of double jeopardy policy . . . ." 449 U. S., at 132. The history of sentencing practices is of little assistance to Missouri in this case, since the sentencing pro-

Court's starting point in that case, 395 U. S., at 719–720, was the established rule that there is no double jeopardy bar to retrying a defendant who has succeeded in overturning his conviction. See, *e. g., United States* v. *Tateo,* 377 U. S. 463 (1964); *United States* v. *Ball,* 163 U. S. 662, 672 (1896). The Court stated that this rule rests on the premise that the original conviction has been nullified and "the slate wiped clean." 395 U. S., at 721. Therefore, if the defendant is convicted again, he constitutionally may be subjected to whatever punishment is lawful, subject only to the limitation that he receive credit for time served.

There is an important exception, however, to the rule recognized in *Pearce.* A defendant may not be retried if he obtains a reversal of his conviction on the ground that the evidence was insufficient to convict. *Burks* v. *United States,* 437 U. S. 1 (1978). The reasons for this exception are relevant here:

> "[R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its cases. As such, it implies nothing with respect to the guilt or innocence of the defendant. . . .
>
> "The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it can assemble. . . . Since we necessarily accord absolute finality to a jury's *verdict* of acquittal—no matter how erroneous its decision—it is difficult to conceive how society has any greater interest

cedures for capital cases instituted after the decision in *Furman* are unique. As we see below, considerations of double jeopardy policy favor petitioner in this case, rather than the State. Missouri, therefore, can rely only upon *DiFrancesco*'s discussion of the Court's prior cases, a discussion that relies chiefly upon *Pearce.* See 449 U. S., at 134–136.

in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty." *Id.*, at 15–16 (emphasis in original).

The decision in *Burks* was foreshadowed by *Green* v. *United States*, 355 U. S. 184 (1957). In that case, the defendant had been indicted for first-degree murder, and the trial court instructed the jury that it could convict him either of that crime or of the lesser included offense of second-degree murder. The jury convicted him of second-degree murder, but the conviction was reversed on appeal. The Court held that a retrial on the first-degree murder charge was barred by the Double Jeopardy Clause, because the defendant "was forced to run the gantlet once on that charge and the jury refused to convict him." *Id.*, at 190. See also *Price* v. *Georgia*, 398 U. S. 323 (1970).

Thus, the "clean slate" rationale recognized in *Pearce* is inapplicable whenever a jury agrees or an appellate court decides that the prosecution has not proved its case.

In the usual sentencing proceeding, however, it is impossible to conclude that a sentence less than the statutory maximum "constitute[s] a decision to the effect that the government has failed to prove its case." [16] In the normal

---

[16] "Sentencing and parole release decisions in this country have largely been left to the unfettered discretion of the officials involved. Legislatures have traditionally set high maximum penalties within which judges must choose specific sentences, but generally have provided little guidance for the exercise of this choice. Although the purposes of sentencing have often been defined as including deterrence, retribution, incapacitation, rehabilitation, and community condemnation to maintain respect for law, legislatures have been silent regarding which purposes are primary and how conflicts among the purposes are to be resolved. For example, federal law currently requires merely that in determining a sentence, the court consider 'in its opinion the ends of justice and best interest of the public.' [18 U. S. C. § 4205 (b).]

"In effect, sentencing policymaking has traditionally been delegated to a multitude of independent judges to be exercised in the context of individ-

process of sentencing, "there are virtually no rules or tests or standards—and thus no issues to resolve . . . ." M. Frankel, Criminal Sentences: Law Without Order 38 (1973). Thus, "[t]he discretion of the judge . . . in [sentencing] matters is virtually free of substantive control or guidance. Where the judge has power to select a term of imprisonment within a range the exercise of that authority is left fairly at large." Kadish, Legal Norm and Discretion in the Police and Sentencing Processes, 75 Harv. L. Rev. 904, 916 (1962).

The Court's cases that have considered the role of the Double Jeopardy Clause in sentencing have noted this absence of sentencing standards. In *DiFrancesco,* for example, we observed: "[A] sentence is characteristically determined in large part on the basis of information, such as the presentence report, developed outside the courtroom. It is purely a judicial determination, and much that goes into it is the result of inquiry that is nonadversary in nature." 449 U. S., at 136–137. And even if it is the jury that imposes the sentence, "[n]ormally, there would be no way for the jury to place on the record the reasons for its collective sentencing determination . . . ." *Chaffin* v. *Stynchcombe,* 412 U. S., at 28, n. 15.

By enacting a capital sentencing procedure that resembles a trial on the issue of guilt or innocence, however, Missouri *explicitly requires* the jury to determine whether the prosecution has "proved its case." Both *Burks* and *Green,* as has been noted, state an exception to the general rule relied upon

---

ual cases. There has been no attempt to separate policymaking from individual sentencing determinations. Normally, some type of presentence investigation is available which attempts to provide an informational basis for an intelligent and 'individualized' sentencing decision. Yet, which factors should be considered, under what circumstances, and how they are to be weighted are decisions left solely to the unfettered discretion of the individual decisionmakers." Hoffman & Stover, Reform in the Determination of Prison Terms: Equity, Determinacy, and the Parole Release Function, 7 Hofstra L. Rev. 89, 96 (1978) (footnotes omitted).

in *North Carolina* v. *Pearce.* That exception is applicable here, and we therefore refrain from extending the rationale of *Pearce* to the very different facts of the present case. Chief Justice Bardgett, in his dissent from the ruling of the Missouri Supreme Court majority, observed that the sentence of life imprisonment which petitioner received at his first trial meant that "the jury has already acquitted the defendant of whatever was necessary to impose the death sentence." 594 S. W. 2d, at 922. We agree.

A verdict of acquittal on the issue of guilt or innocence is, of course, absolutely final. The values that underlie this principle, stated for the Court by Justice Black, are equally applicable when a jury has rejected the State's claim that the defendant deserves to die:

> "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green* v. *United States,* 355 U. S., at 187–188.

See also *United States* v. *DiFrancesco,* 449 U. S., at 136. The "embarrassment, expense and ordeal" and the "anxiety and insecurity" faced by a defendant at the penalty phase of a Missouri capital murder trial surely are at least equivalent to that faced by any defendant at the guilt phase of a criminal trial. The "unacceptably high risk that the [prosecution], with its superior resources, would wear down a defendant," *id.,* at 130, thereby leading to an erroneously imposed death sentence, would exist if the State were to have a further opportunity to convince a jury to impose the ultimate punish-

ment.   Missouri's use of the reasonable-doubt standard indicates that in a capital sentencing proceeding, it is the State, not the defendant, that should bear "almost the entire risk of error." *Addington* v. *Texas,* 441 U. S., at 424.   Given these considerations, our decision today does not at all depend upon the State's announced intention to rely only upon the same aggravating circumstances it sought to prove at petitioner's first trial or upon its statement that it would introduce no new evidence in support of its contention that petitioner deserves the death penalty.   Having received "one fair opportunity to offer whatever proof it could assemble," *Burks* v. *United States,* 437 U. S., at 16, the State is not entitled to another.

## V

The Court already has held that many of the protections available to a defendant at a criminal trial also are available at a sentencing hearing similar to that required by Missouri in a capital case.   See, *e. g., Specht* v. *Patterson,* 386 U. S. 605 (1967) (due process protections such as right to counsel, right to confront witnesses, and right to present favorable evidence are available at hearing at which sentence may be imposed based upon "a new finding of fact . . . that was not an ingredient of the offense charged," *id.,* at 608).   Because the sentencing proceeding at petitioner's first trial was like the trial on the question of guilt or innocence, the protection afforded by the Double Jeopardy Clause to one acquitted by a jury also is available to him, with respect to the death penalty, at his retrial.[17]   We therefore refrain from extending the reasoning of *Stroud* v. *United States,* 251 U. S. 15 (1919), to this very different situation.

The judgment of the Supreme Court of Missouri is re-

---

[17] Because of our conclusion on the Double Jeopardy Clause issue, we have no occasion to address petitioner's claims under the Sixth, Eighth, and Fourteenth Amendments.

versed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE POWELL, with whom THE CHIEF JUSTICE, JUSTICE WHITE, and JUSTICE REHNQUIST join, dissenting.

This case concerns the force of the Double Jeopardy Clause after a defendant convicted of a crime and sentenced has succeeded in having his conviction reversed. The Court holds that the jury's decision at petitioner's first trial to sentence him to life imprisonment precludes Missouri from asking the jury at petitioner's second trial to sentence him to death. I consider the Court's opinion irreconcilable in principle with the precedents of this Court.

I

It is well-established law that the Double Jeopardy Clause does not apply to sentencing decisions after retrial with the same force that it applies to redeterminations of guilt or innocence. Since *Stroud* v. *United States,* 251 U. S. 15 (1919), it has been settled that a defendant whose conviction is reversed may receive a more severe sentence upon retrial than he received at his first trial. The Court followed this principle in *North Carolina* v. *Pearce,* 395 U. S. 711 (1969), where it held that a "corollary of the power to retry a defendant is the power, upon the defendant's reconviction, to impose whatever sentence may be legally authorized, whether or not it is greater than the sentence imposed after the first conviction." *Id.,* at 720. In contrast, where the question was whether a defendant could be retried for first-degree murder after the jury at his first trial had found him guilty only of second-degree murder, the Court "regarded the jury's verdict as an implicit acquittal on the charge of first degree murder" and held that the Double Jeopardy Clause therefore barred retrial

on that charge. *Green* v. *United States,* 355 U. S. 184, 190 (1957).

Although there is some tension between the *Green* and *Pearce* opinions, their holdings are not inconsistent. Both have become landmarks in the law of the Double Jeopardy Clause. The Court has cited each opinion time and time again, and more than once the Court has declined to re-examine *Pearce.* Indeed, its rationale has been reaffirmed in recent cases. *United States* v. *DiFrancesco,* 449 U. S. 117, 135–136, n. 14 (1980); *Chaffin* v. *Stynchcombe,* 412 U. S. 17, 24 (1973). Earlier this Term, the Court stated without quali-fication that "the difference in result reached in *Green* and *Pearce* can be explained only on the grounds that the imposi-tion of sentence does not operate as an implied acquittal of any greater sentence." *United States* v. *DiFrancesco, supra,* at 136, n. 14.[1] Compare *ante,* at 438 ("The imposition of a particular sentence *usually* is not regarded as an 'acquittal' of any more severe sentence . . . ." (emphasis added)). But today the Court applies *Green*'s principle of "implicit acquit-tal" to sentencing, despite *Pearce* and the unqualified state-ment in *DiFrancesco.*

## II

The Court justifies applying the implicit-acquittal principle to the sentencing in this case on the ground that Missouri's death penalty statute establishes certain procedures for the sentencing phase of a capital murder trial.[2] In the Court's

---

[1] In *Pearce,* the Court stated: "The Court's decision in *Green* v. *United States,* 355 U. S. 184, is of no applicability to the present problem. The *Green* decision was based upon the double jeopardy provision's guarantee against retrial for an offense of which the defendant was *acquitted.*" 395 U. S., at 720, n. 16 (emphasis in original).

[2] In the Court's view, these procedures distinguish this case from *United States* v. *DiFrancesco,* 449 U. S. 117 (1980), *Chaffin* v. *Stynchcombe,* 412 U. S. 17 (1973), *North Carolina* v. *Pearce,* 395 U. S. 711 (1969), and *Stroud* v. *United States,* 251 U. S. 15 (1919), where the sentencing decisions were not made pursuant to similar procedures. No one questions

view, these procedures give the sentencing phase "the hall-marks of the trial on guilt or innocence," *ante,* at 439, and require the jury to decide whether the State has proved that the defendant deserves the penalty of death, *ante,* at 444. The decision at the first trial to impose life imprisonment, the Court reasons, reflects a decision that the State failed to prove that the defendant deserves capital punishment. According to the Court, that decision implies an "acquittal" of the harsher sentence.

Having characterized the jury's decision for life imprison-ment as an "acquittal" of the death sentence, the Court recites the classic double jeopardy rationale applicable to retrying the issue of guilt or innocence, *Green* v. *United States, supra,* at 187–188, and applies it to the reconsideration of an appro-priate sentence for one whose guilt is unquestioned. *Ante,* at 445–446. It states, without documentation in the record, that the expense, ordeal, and anxiety at a resentencing in a capital murder case are as great as would accompany a redetermination of guilt or innocence. *Ante,* at 445. It also states that Missouri's second attempt to obtain a death sentence might lead to an erroneously imposed death sentence. *Ante,* at 445–446. The Court therefore concludes that the Double Jeopardy Clause bars Missouri from again seeking the death penalty against petitioner.

This is the first time the Court has held that the Double Jeopardy Clause applies equally to sentencing and to deter-minations of guilt or innocence. It heretofore has been thought that there is a fundamental difference between the two. *Stroud* v. *United States, supra; North Carolina* v. *Pearce, supra; Chaffin* v. *Stynchcombe, supra; United States* v. *DiFrancesco, supra.* I would adhere to these precedents, and think they control this case.

---

that these procedures, applicable in capital cases, are different. But analytically the difference is immaterial for purposes of the Double Jeopardy Clause. See *infra,* at 450.

Underlying the question of guilt or innocence is an objective truth: the defendant, in fact, did or did not commit the acts constituting the crime charged. From the time an accused is first suspected to the time the decision on guilt or innocence is made, our criminal justice system is designed to enable the trier of fact to discover that truth according to law. But triers of fact can err, and an innocent person can be pronounced guilty. In contrast, the law provides only limited standards for assessing the validity of a sentencing decision. The sentencer's function is not to discover a fact, but to mete out just deserts as he sees them. Absent a mandatory sentence, there is no objective measure by which the sentencer's decision can be deemed correct or erroneous if it is duly made within the authority conferred by the legislature.[3]

In light of this difference in the nature of the decisions, the question in this case is not—as the Court would frame it—whether the procedures by which a sentencing decision is made are similar to the procedures by which a decision on guilt or innocence is made. Rather, the question is whether the *reasons* for considering an acquittal on guilt or innocence as absolutely final apply equally to a sentencing decision imposing less than the most severe sentence authorized by law. I would have thought that the pertinence of this question was clear, and that the answer consistently given in the past could not have escaped the Court. Earlier this Term, in *United States* v. *DiFrancesco,* we stated that "[t]here are . . . fundamental distinctions between a sentence and an acquittal, and to fail to recognize them is to ignore the particular significance of an acquittal." 449 U. S., at 133.

---

[3] Of course, a sentence imposed upon one who did not commit the crime is "erroneous," but the error inheres in the decision on guilt or innocence, not in the sentencing decision. Also, a sentence may be called "erroneous" if it is grossly disproportionate to the severity of the crime committed. But in that event, the sentence is "cruel and unusual" in violation of the Eighth Amendment. *Weems* v. *United States,* 217 U. S. 349 (1910).

The reasons for considering an acquittal on guilt or innocence as absolutely final do not apply equally to a sentencing decision for less than the most severe sentence authorized by law. A retrial of a defendant once found to have been innocent "enhanc[es] the possibility that even though innocent he may be found guilty." *Green* v. *United States,* 355 U. S., at 188. But in *Chaffin* v. *Stynchcombe,* 412 U. S., at 25, we held that "[t]he possibility of a higher sentence was recognized and accepted [in *Pearce*] as a legitimate concomitant of the retrial process." The possibility of a higher sentence is acceptable under the Double Jeopardy Clause, whereas the possibility of error as to guilt or innocence is not, because the second jury's sentencing decision is as "correct" as the first jury's. Similarly, a defendant once found to have been innocent cannot be forced a second time through the ordeal of trial. But when a defendant is found guilty, he must bear the ordeal of being sentenced just as he does the ordeal of serving sentence.

In sum, I find wholly unpersuasive the Court's justification for applying the implicit-acquittal principle to sentencing. The Court does not purport to justify its conclusion with the argument that facing the death sentence a second time is more of an ordeal in the legal sense than facing any other sentence a second time. The death sentence, of course, is unlike any other punishment. For that reason, this Court has read the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment to require that States prescribe unique procedural safeguards to protect against capricious or discriminatory impositions of the death sentence. *Furman* v. *Georgia,* 408 U. S. 238 (1972); *Gregg* v. *Georgia,* 428 U. S. 153 (1976) (joint opinion). But a death sentence imposed in accord with the strictures of the Eighth Amendment and the Fourteenth Amendment is a lawful sentence, and Missouri provides the requisite procedures. I find no basis under the Double Jeopardy Clause for the Court to single out a sentence which is statutorily authorized, and

otherwise may be imposed constitutionally, as nonetheless one that a guilty defendant may not be required to face twice. Petitioner's ordeal upon retrial would not be different in kind from that of the defendants in *Chaffin* and *Stroud,* both of whom faced the possibility of the death sentence upon reconviction. *Chaffin* v. *Stynchcombe, supra,* at 18–19; *Stroud* v. *United States,* 251 U. S., at 17–18. The Court today simply disregards the principles established by prior cases.[4]

## III

In the course of explaining why the Double Jeopardy Clause does not bar retrial after a reversal for trial error, the Court stated: "Corresponding to the right of an accused to be

[4] I would have trouble concurring in the Court's judgment even if I agreed with the Court that the procedures of the Missouri death penalty statute distinguish this case from *Pearce, Chaffin,* and *Stroud.* In the Court's view, the first jury's decision to sentence petitioner to life imprisonment rather than death reveals that the State failed to "prove its case" that petitioner deserved capital punishment. On this premise the Court concludes that the principle of *Green* and *Burks* v. *United States,* 437 U. S. 1 (1978), bars a second attempt by the State to secure a death sentence.

Under the Missouri statute, Mo. Rev. Stat. § 565.012 (1978), the "case" that the State had to prove was that petitioner committed the murder under circumstances defined as "aggravating" and that these circumstances warranted the imposition of the death penalty. But the trial court expressly instructed the jury that it could choose life imprisonment rather than death even if it found beyond a reasonable doubt that the State had proved the existence and gravity of such circumstances. See *ante,* at 434–435. Thus, the jury's decision for life imprisonment rather than death does not necessarily mean that the State adduced insufficient evidence. To be sure, an acquittal on the question of guilt or innocence does not necessarily mean that the State adduced insufficient evidence, and yet such acquittals are final. But juries instructed on the question of guilt or innocence are not told that they can ignore the State's evidence. Where the jury is so instructed, as in this case, there is significantly less reason to assume that the State failed to prove its case. Accordingly, there is less reason to consider a second attempt to obtain the death penalty an unfair " 'second bite at the apple.' " *Burks* v. *United States, supra,* at 17.

given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial." *United States* v. *Tateo,* 377 U. S. 463, 466 (1964). Missouri has decided that death is an appropriate punishment for one whose guilt of murder with aggravating circumstances is made clear through special procedures. There is no justification in the Constitution for barring Missiouri from exacting that punishment unless Missouri's interest in doing so conflicts with constitutionally protected interests of the defendant. The Double Jeopardy Clause does not protect a guilty defendant's interest in avoiding a harsher sentence upon retrial, even the death sentence. I therefore dissent.