**Norman A.J. McCALL, Plaintiff,**

v.

**SHIELDS ASSOCIATES, INC., et al., Defendants.**

**Civ. A. No. 83–2715.**

United States District Court,
District of Columbia.

May 15, 1985.

Jack H. Olender, Harlow R. Case, John O'Connor, Washington, D.C., for plaintiff.

Kevin J. McCarthy, Upper Marlboro, Md., for defendant Shields.

Thomas H. Talbott, Rockville, Md. and Sam DeBlasis, Upper Marlboro, Md., for defendant Smith.

**MEMORANDUM**

GASCH, District Judge.

On May 6, 1985, defendant Shields Associates, Inc. ("Shields") filed a motion challenging the constitutionality of the Modified Plan for the United States District Court for the District of Columbia for the Random Selection of Grand and Petit Jurors (as amended through May 22, 1978) (hereinafter "the Modified Plan"). Shields also contends that the Modified Plan violates the Federal Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.* ("the Jury Act"). On May 10, 1985, the Court held a hearing on this motion, which included testimony presented by Ugo Carusi, Esq., Chairman of the Jury Commission of the District of Columbia, and Kathleen C. Beadnell, Chief Clerk to that Commission. The Court denied the Shields motion from the bench. This memorandum is issued pursuant to that ruling.

The Shields motion challenges only one aspect of the Modified Plan: the automatic excuse provisions contained in Section G(2). Under that section, individuals in specified categories [1] may elect to be excused from jury duty. Shields contends that because a higher percentage of white persons receiving jury questionnaires [2] elect to rely on one of these excuse provisions than black persons responding to the questionnaires,[3]

---

1. The Modified Plan provides that the following persons may be excused from jury service on request:
   1. Persons over 70 years of age;
   2. Nurses in active practice;
   3. Persons actively engaged as ministers of religion, or clergymen, of any denomination;
   4. Persons who have served as grand or petit jurors in the District of Columbia within four years;
   5. Persons actively teaching or supervising in public, private, or parochial school or college;
   6. Persons required at home to care for children under ten years of age, or for a disabled person who cannot be left alone, where there is no other family member available to provide substitute care;
   7. Self-employed in a "one person" business;
   8. Attorneys admitted to practice before any Court, State or Federal and all or part of whose time is spent in advising, interpreting, or applying the law;
   9. Physicians and surgeons in active practice; and

   10. Dentists in active practice.
   Members of these classes are not, however, required to request excuses.

2. Pursuant to Section D(7) of the Modified Plan, as the need arises, the Jury Commission draws the names of persons from the master wheel which consists of a merger of the D.C. Board of Elections' Registered Voters Master File with the D.C. Department of Motor Vehicles file of licensed drivers who are eighteen years of age or over. All persons whose names are drawn receive questionnaires examining their qualifications for jury service. The completed questionnaires are then reviewed by the Commission in establishing the "qualified jury wheel."

3. Specifically, Shields contends that the percentage of white persons who took advantage of excuse provisions ranged from 29.13 to 41.27% between 1977 and 1984 while the percentage of black persons doing so ranged from 11.04 to 26.63%.

the Modified Plan systematically excludes white persons from serving on juries in violation of the Seventh Amendment, Due Process Clause, and Jury Act.

Shields relies principally on *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979), and *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). *Duren*, *Taylor*, and their progeny, however, are not applicable to this case as they address the Sixth Amendment right (made applicable to the states by virtue of the Fourteenth Amendment) of *criminal* defendants to a jury drawn from a fair cross-section of the community. *See, e.g., Bullington v. Missouri*, 451 U.S. 430, 436, 101 S.Ct. 1852, 1856, 68 L.Ed.2d 270 (1981); *Taylor*, 419 U.S. at 522–23, 95 S.Ct. at 692–94. By its terms, the Sixth Amendment has no relevance to civil proceedings but instead serves to "guarantee[ ] an impartial jury trial in *criminal* prosecutions." *Taylor*, 419 U.S. at 526, 95 S.Ct. at 695 (emphasis supplied).

■ A review of the cases cited in Shields' brief fails to support Shields' argument that the Seventh Amendment or Due Process Clause provide a civil defendant with a right to a jury drawn from a fair cross-section of the community that is identical to that of a criminal defendant.[4] Moreover, even assuming Shields is correct in this regard, it has failed to establish a prima facie case of violation of the fair cross-section requirement. To do so Shields would have to establish that the representation of whites on the qualified jury wheel "is not fair and reasonable in relation to the number of such persons in the community." *Duren*, 439 U.S. at 364, 99 S.Ct. at 668. As the affidavit submitted by Dr. Richard J. Lurito demonstrates, whites make up 18.64 percent of those persons on the qualified jury wheel and 26 percent of the total population in the District of Columbia. Although there is some disparity, the Court finds that the discrepancy is not sufficient to constitute a violation of the fair cross-section requirement. *See Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *United States v. Test*, 550 F.2d 577, 587 (10th Cir.1976). This case is thus distinguishable from *Duren* where women represented 54 percent of the population but only 14.5 percent of the prospective jurors. 439 U.S. at 365–66, 99 S.Ct. at 669.[5]

---

**4.** The only cases cited by Shields that arise in the context of civil litigation are *Thiel v. Southern Pacific Co.*, 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946), and *McGinnis v. M.I. Harris, Inc.*, 486 F.Supp. 750, 755 (N.D.Tex.1980). In *Thiel*, a plaintiff employed as a daily wage earner who had brought a personal injury claim challenged the jury verdict in favor of the defendant railroad by arguing that all persons who worked for a daily wage had been excluded from the jury list. The clerk of the court and jury commissioner admitted in their testimony that this exclusion had been made "deliberately and intentionally." 328 U.S. at 221, 66 S.Ct. at 986. Without identifying any constitutional basis, the Court stated that: "The American tradition of trial by jury, considered in connection with either criminal or civil proceedings contemplates an impartial jury drawn from a cross-section of the community." *Id.* at 220, 985. Even assuming that the *Thiel* holding was based on either the Due Process Clause or the Seventh Amendment, the Court finds that the instant case is distinguishable from *Thiel*. The *Thiel* Court noted that there was "nothing in the federal statutes [that] warrants such an exclusion." In contrast, as discussed *infra*, the Jury Act expressly authorizes the excuse provisions

Shields complains of where, as here, certain findings have been made.

Shields' reliance on *McGinnis* is also misplaced. The *McGinnis* Court rejected the jury challenge in that case as time-barred and expressly reserved the question of whether the *Duren* analysis is applicable to civil cases. 486 F.Supp. at 755.

**5.** The Court's decision is also supported by language in *Taylor v. Louisiana*, 419 U.S. at 534, 95 S.Ct. at 699, authorizing

> exemptions from jury service to individuals in case of special hardship or incapacity and to those engaged in particular occupations the uninterrupted performance of which is critical to the community's welfare.

The *Taylor* Court explicitly noted its continuing approval of *Rawlins v. Georgia*, 201 U.S. 638, 26 S.Ct. 560, 50 L.Ed. 899 (1906), where a challenge similar to the instant case was rejected with the following language:

> [I]f the state law [ ] should exclude certain classes [from mandatory jury service] on the bona fide ground that it was for the good of the community that their regular work should not be interrupted, there is nothing in the Fourteenth Amendment to prevent it.

■ The Supreme Court has also recognized the Equal Protection Clause protects against discriminatory exclusion or substantial underrepresentation of persons from petit or grand juries. *See, e.g., Castaneda v. Partida,* 430 U.S. 482, 493–94, 97 S.Ct. 1272, 1279–80, 51 L.Ed.2d 498 (1977); *Hernandez v. Texas,* 347 U.S. 475, 477, 74 S.Ct. 667, 669, 98 L.Ed. 866 (1954).[6] Assuming, without deciding, that this line of cases applies both to civil and criminal proceedings, Shields cannot succeed in its challenge under this authority as well. As discussed *supra,* Shields has failed to establish a sufficient "degree of underrepresentation." Moreover, Shields failed to establish that the selection process is not racially neutral or that it is susceptible of abuse. It is undisputed that the jury lists are compiled from racially neutral sources. The excuse provisions complained of are based solely on objective criteria. *See United States v. Lopez,* 588 F.2d 450, 451–52 (5th Cir.), *cert. denied,* 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 319 (1979); *Obregon v. United States,* 423 A.2d 200, 207 (D.C. 1980), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3054, 69 L.Ed.2d 422 (1981). Thus plaintiff has failed to establish a prima facie case as the statistics proffered do not support an inference of intentional discrimination.

Even if Shields had established a prima facie violation, the testimony of Ugo Carusi, Chairman of the District of Columbia Jury Commission, clearly demonstrated that the Modified Plan was developed, adopted, and implemented without discriminatory intent. Any unequal representation was shown to be the product of racially neutral selection criteria. *Washington v. Davis,* 426 U.S. 229, 241, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976).

■ Having rejected Shields' constitutional challenge, the Court next considers the sufficiency of Shields' claim that the Modified Plan fails to comply with the Jury Act. Shields does not contend that the Modified Plan violates the requirement of 28 U.S.C. § 1863(b)(2) that the names of prospective jurors "be selected from the voter registration lists." Rather Shields challenges the excuse provisions of Section G(2) of the Modified Plan as violative of 28 U.S.C. § 1863(b)(5). The Court rejects this challenge as without merit. First, the excuse provisions were adopted pursuant to findings of the District Court referred to in the Modified Plan that mandatory service by the affected categories "would entail undue hardship or extreme inconvenience to the members thereof, and [that] excuse of the members [of these groups] would not be inconsistent with sections 1861 and 1862" of the Judicial Code. Section 1863(b)(5) specifically authorizes such excuse provisions if such findings are properly made. The Court sees no basis for challenging these findings.[7] Second, the legislative history of the Jury Act demonstrates that the statute does not contemplate challenges such as that presently before the Court so long as "the initial source list [in] the selection process" produces a fair representation of the make-up of the communi-

The *Rawlins* Court specifically offered as examples of such permissible exemptions any "exemption of lawyers, ministers of the gospel, [and] doctors," three of those recognized by the Modified Plan.

**6.** The test for establishing an Equal Protection Clause violation is as follows:

The first step is to establish that the group [that was substantially underrepresented] is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied. Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time. Finally, [ ] a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing.

*Castaneda,* 430 U.S. at 494, 97 S.Ct. at 1280 (citations omitted).

**7.** Indeed, the legislative history of the Jury Act suggests that Congress specifically anticipated that a jury plan could properly authorize excuses from service from a number of the categories contained in Section G(2). *See Sweet v. United States,* 449 A.2d 315, 326 (D.C.1982) (noting that Congress contemplated that "among others, doctors, ministers, sole proprietors of business, and mothers with young children" would be eligible for excuse provisions).

ty. *See* H.R.Rep. No. 1076, 90th Cong., 2d Sess. at 5, *reprinted in* [1968] U.S.Code Cong. & Ad.News, p. 1794. The District of Columbia Court of Appeals relied on this reasoning to reject a Jury Act challenge to the Modified Plan in *Obregon v. United States, supra,* and the Court adopts the reasoning of that decision. *See id.* at 207–09.