No. 88–7384.   SOROLA *v.* TEXAS.   Ct. Crim. App. Tex.   Certiorari denied.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

Petitioner, Joe Sorola, was indicted for capital murder under Tex. Penal Code Ann. § 19.03(a)(2) (Supp. 1988–1989).   At trial, the State announced in open court that it would not seek the death penalty and jury selection proceeded as if the death penalty was not at issue.[1]   As the lower court explained:

---

[1] See Tex. Code Crim. Proc. Ann., Art. 35.25 (Vernon 1989) (prescribing *voir dire* procedure for capital cases in which State has agreed not to seek death penalty).   See generally *Witherspoon* v. *Illinois,* 391 U. S. 510 (1968).

> "The record reflects that following the jury's decision that [Sorola] was guilty of capital murder, the jury was sent back to the jury room. Outside the presence of the jury, the trial court, the State, and [Sorola] agreed that because the State had waived the death penalty in this case, the proper procedure was to have the court assess punishment. The trial court then found [Sorola] guilty of capital murder and sentenced him to life imprisonment in the Texas Department of Corrections. Thereafter without objection, the court informed the parties he was going to release the jury panel." 674 S. W. 2d 809, 810 (Tex. App. 1984).

Petitioner appealed his conviction and sentence. The Texas Court of Criminal Appeals found that under state law, the State cannot waive its right to seek the death penalty, and a defendant cannot waive the right to a jury's assessment of punishment. 693 S. W. 2d 417, 419 (1985). Upon remand for a new trial, petitioner filed an application for writ of habeas corpus arguing that the Double Jeopardy Clause barred the State from seeking the death penalty if he were once again found guilty of capital murder on retrial.[2] The Texas courts rejected his claim and he now seeks certiorari.[3] 769 S. W. 2d 920, 926–928 (Tex. Crim. App. 1989). Because I believe the Double Jeopardy Clause bars the State from subjecting petitioner to the death penalty on retrial, I would grant the petition and reverse the Texas Court of Criminal Appeals.

## I

In *Bullington* v. *Missouri*, 451 U. S. 430 (1981), this Court held that the Double Jeopardy Clause prohibits the State from subjecting a defendant who received a life sentence in his first sentencing proceeding to the possibility of a death sentence on retrial after reversal of his conviction or sentence. The Court concluded that because the capital sentencing proceeding "in all relevant respects was like the immediately preceding trial on the issue of guilt or in-

---

[2] Although the Texas courts found reversible error only at the sentencing phase, under Texas law petitioner is entitled to a new trial on both guilt and sentencing. 769 S. W. 2d 920, 923 (Tex. Crim. App. 1989).

[3] We have jurisdiction under 28 U. S. C. § 1257 (1982 ed.) because the judgment rejecting petitioner's double jeopardy claim is "final." See *Bullington* v. *Missouri*, 451 U. S. 430, 437, n. 8 (1981); see also *Abney* v. *United States*, 431 U. S. 651 (1977).

nocence," *id.*, at 438, the jury's conclusion that the evidence did not support the death penalty constituted an acquittal of death. *Id.*, at 445. In *Arizona* v. *Rumsey*, 467 U. S. 203, 211 (1984), the Court made clear that the fact that the acquittal resulted from an error of law did not deprive it of finality under the Double Jeopardy Clause.

There should be no doubt that *Bullington* and *Rumsey* apply to capital sentencing determinations made by Texas juries.[4] Thus if a Texas jury had determined that petitioner deserved a life sentence, this case would require a straightforward application of *Bullington* and *Rumsey*. In this case, the life sentence was imposed by the trial judge after the State waived the right to seek the death penalty. But this difference is of no significance for double jeopardy purposes because the form of the judicial action does not determine whether it constitutes an acquittal. Rather, the determination turns on "whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States* v. *Martin Linen Supply Co.*, 430 U. S. 564, 571 (1977).[5] In the context of capital sentencing, "*Bullington* indicates that the proper inquiry is whether the sentencer or reviewing court has 'decided that the prosecution has not proved its case'

---

[4] The Texas capital sentencing scheme has been described in detail elsewhere. See, *e. g.*, *Penry* v. *Lynaugh*, 492 U. S. 302, 310–311 (1989). It is sufficient for present purposes to note that the Texas capital sentencing scheme has the same characteristics as the Missouri and Arizona sentencing proceedings that made them comparable to a trial for double jeopardy purposes: (1) the sentencer's discretion is limited to two options: life or death; (2) the sentencer's discretion is guided by substantive standards; and (3) the proceeding resembles a trial at which evidence is introduced and in which the State must prove the existence of predicate facts justifying the death penalty beyond a reasonable doubt. Tex. Code Crim. Proc. Ann., Art. 37.071 (Vernon Supp. 1988–1989). See *Bullington, supra*, at 438; *Rumsey*, 467 U. S., at 209. Thus "when the [Texas] sentencer imposes a sentence of life imprisonment in a capital sentencing proceeding, it has determined that the prosecutor has failed to prove its case." *Id.*, at 209–210.

[5] The Texas Court of Criminal Appeals held that the trial judge's action did not constitute an acquittal on the merits because the judge made no findings that the death penalty was not justified. This finding is not binding on this Court, for whether a trial judge's action constitutes an acquittal is a federal question. *Justices of Boston Municipal Court* v. *Lydon*, 466 U. S. 294, 321 (1984) (opinion of BRENNAN, J.). Cf. *Crist* v. *Bretz*, 437 U. S. 28, 37–38 (1978).

*that the death penalty is appropriate."* *Poland* v. *Arizona,* 476
U. S. 147, 155 (1986) (emphasis in original).

The judge's imposition of a life sentence cannot be characterized
as anything other than an acquittal of death. The trial judge im-
posed a sentence of life imprisonment because the State waived its
right to seek the death penalty. Thus, there was absolutely no
evidence in the record to support the death penalty. That the
judge's decision was based on the complete lack of evidence rather
than the existence of insufficient evidence should strengthen peti-
tioner's claim to double jeopardy protection. A core purpose of
the Double Jeopardy Clause is to ensure that the state does not
get a second opportunity to prove its case after failing to do so ini-
tially. This principle is equally applicable in the capital sentenc-
ing context: "[h]aving received 'one fair opportunity to offer what-
ever proof it could assemble,' the State is not entitled to another."
*Bullington, supra,* at 446 (quoting *Burks* v. *United States,* 437
U. S. 1, 16 (1978)).

To be sure, *Bullington* and *Rumsey* relied on the fact that the
sentencer had determined after a trial-like hearing that the evi-
dence was insufficient to impose the death penalty and in this case
there was no sentencing hearing. But the significance of the
presence of a trial-like proceeding was that it distinguished a capi-
tal case from the noncapital sentencing context, where the imposi-
tion of a particular sentence is not an implied acquittal of a greater
sentence. See *Bullington,* 451 U. S., at 439–441. The Court
justified an exception to the general rule because of the unique
features of the capital sentencing scheme where the state bears
the burden of proving, often beyond a reasonable doubt, that
death is the appropriate penalty. *Ibid.* As noted, the Texas
capital punishment statute requires the State to prove certain
facts beyond a reasonable doubt. See Tex. Code Crim. Proc.
Ann., Art. 37.071 (Vernon Supp. 1988–1989). Thus, the prosecu-
tor's decision to waive the death penalty makes this case more like
*Bullington* than a decision to seek a specific sentence in a
noncapital sentencing context; it reflects the prosecutor's conclu-
sion that there was insufficient evidence to justify the death pen-
alty. See *Bullington, supra,* at 441 (use of beyond-reasonable-
doubt standard reflects society's belief that defendant's interests
are so great that State should bear the risk of error). The fact

that the prosecutor responsibly acknowledges the weakness of the case should not lessen the effect of the trial judge's imposition of a life sentence. A contrary conclusion would mean that the Double Jeopardy Clause protects the defendant only if the prosecutor, knowing that the case is weak, actually presents it to the jury and it ratifies that initial judgment by rejecting the death penalty. We do not have such a rule in the guilt phase. See *United States* v. *Martin Linen Supply Co.*, *supra*, at 574 (no difference for double jeopardy purposes between entry of judgment of acquittal before or after submission to jury); *Smalis* v. *Pennsylvania*, 476 U. S. 140, 144–145 (1986) (granting demurrer at end of state's case constitutes acquittal even if based on erroneous legal ruling). I see no reason to require such a rule at the sentencing phase.[6]

---

[6] I find it irrational and perhaps unconstitutional for state law to require the parties to proceed with a capital sentencing hearing when both parties agree that the death penalty is inappropriate. A prosecutor's decision to waive the death penalty rather than burden the defendant, the court, and the jury with a meaningless proceeding should be respected, if not applauded. The Texas law significantly interferes with prosecutorial discretion and raises grave constitutional concerns in a capital sentencing context. It creates institutional pressure on a prosecutor to charge capital murder even if he believes that the death penalty is unwarranted to ensure that the defendant will be sentenced to life. Pressuring a prosecutor to charge capital murder even when he believes the evidence does not support the death penalty increases the risk of arbitrary imposition of the death penalty. Cf. *Beck* v. *Alabama*, 447 U. S. 625, 637–638 (1980) (prohibiting jury from considering lesser included offense to capital murder increases arbitrariness by depriving jury of "third option" between acquittal and death penalty).

I pause to note just how odd the state court's decision that the prosecutor may not waive the death penalty is. The Texas Court of Criminal Appeals acknowledged that a trial judge has statutory authority to enter a sentence of life imprisonment in several types of cases: (1) when the defendant is a juvenile; (2) when the defendant is found guilty of a lesser included offense; (3) when the jury is unable to answer the questions at the sentencing hearing; and (4) even after the jury imposes a verdict of death, when the trial judge determines that the evidence is insufficient. 769 S. W. 2d, at 927 (discussing statutes). Concluding that state law precludes a trial judge from imposing a life sentence when the prosecutor affirmatively waives the death penalty is especially anomalous when the Texas Criminal Code provides for a special *voir dire* procedure in capital cases in which the State waives the death penalty. See Tex. Code Crim. Proc. Ann., Art. 35.25 (Vernon 1989) (applicable "in capital cases *in which the State's attorney has announced that he will not qualify the jury for, or seek the death penalty* . . ." (emphasis added)). See also 769 S. W. 2d, at 933–936 (Clinton, J., concurring) (arguing that rule prohibiting

1010

Finally, the fact that the trial judge did not have the authority under state law to allow the State to waive the death penalty is irrelevant for purposes of the Double Jeopardy Clause.[7]   We have consistently held that "the fact that 'the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles' . . . affects the accuracy of that determination, but it does not alter its essential character." *United States* v. *Scott*, 437 U. S. 82, 98 (1978) (quoting *id.*, at 106 (BRENNAN, J., dissenting)); see also *Rumsey*, 467 U. S., at 211.   Moreover, the trial judge's actions in this case are not distinguishable from those in *Fong Foo* v. *United States*, 369 U. S. 141 (1962) *(per curiam)*. In that case, the District Court ordered the jury to enter judgments of acquittal as to all the defendants based on insufficient evidence and prosecutorial misconduct.   The Court held that even if the trial judge's actions were improper, the protection of the Double Jeopardy Clause attached to the acquittal.   *Id.*, at 143.   If the judgment in *Fong Foo* constituted an acquittal, the life sentence in this case must constitute an acquittal of death.

---

State from waiving death penalty is vestige from era before *Gregg* v. *Georgia*, 428 U. S. 153 (1976), and should not be continued).   Although this Court cannot review a state court's interpretation of its own laws, neither may a State adopt a rule which effectively limits a trial judge's ability to grant an acquittal.   Cf. *Crist* v. *Bretz*, 437 U. S., at 37–38 (State cannot adopt its own rule about when jeopardy attaches).

[7] Petitioner was clearly placed in jeopardy as to the sentence: he was indicted for capital murder, the jury was sworn and empaneled, and it convicted him of capital murder.   *Ibid.*   The State argues, however, that because petitioner appealed on the issue of the trial judge's authority to impose a life sentence, the concept of "continuing jeopardy" applies and the State is free to subject him to the death penalty on retrial.   See *North Carolina* v. *Pearce*, 395 U. S. 711, 719–720 (1969) (when defendant wins reversal of conviction on appeal, "the slate [is] wiped clean" and double jeopardy does not bar imposition of harsher punishment on retrial).   This begs the precise question in this case.   Because the trial judge's actions constituted an acquittal, the concept of continuing jeopardy is inapplicable.   See *Bullington*, 451 U. S., at 443 ("[T]he 'clean slate' rationale recognized in *Pearce* is inapplicable whenever a jury agrees or an appellate court decides that the prosecution has not proved its case"); see also *Smalis* v. *Pennsylvania*, 476 U. S. 140, 145 (1986) ("continuing jeopardy" inapplicable when trial judge's ruling constitutes an acquittal).   Petitioner's decision to appeal his sentence cannot transform what was already an acquittal into something less.

## II

Even if I did not conclude that the Double Jeopardy Clause prevents the imposition of the death penalty on resentencing, my belief that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, see *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976) (BRENNAN, J., dissenting), would compel me to vacate the judgment below and remand for resentencing on the condition that the State be precluded from imposing the death sentence.