**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT JEFFREY FARMER,
*Petitioner-Appellant,*

v.

E.K. McDANIEL, Warden,
*Respondent-Appellee.*

No. 10-99017

D.C. No.
3:09-cv-00379-RCJ-
RAM

OPINION

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, Chief District Judge, Presiding

Argued and Submitted
December 5, 2011—San Francisco, California

Filed February 7, 2012

Before: Stephen S. Trott and Carlos T. Bea, Circuit Judges,
and Rebecca R. Pallmeyer, District Judge.*

Opinion by Judge Bea

---

*The Honorable Rebecca R. Pallmeyer, District Judge for the U.S. District Court for Northern Illinois, sitting by designation.

## COUNSEL

Michael Pescetta, Office of the Federal Public Defender, Las Vegas, Nevada, for the petitioner-appellant.

Robert Wieland, Office of the Attorney General, Reno, Nevada, for the respondent-appellee.

## OPINION

BEA, Circuit Judge:

Robert Farmer was sentenced to death in Nevada in 1984 after a three-judge post-conviction sentencing panel found the existence of two statutory aggravating circumstances, both of which were based on the murder's commission in the course of other felonies. The panel found no mitigating circumstances. However, Farmer's death sentence was vacated in 2007 after the Nevada Supreme Court held that it was unconstitutional to use as an aggravating circumstance the fact that a murder was committed in the course of committing another felony or felonies. *McConnell v. State*, 102 P.3d 606 (2004). It then applied that decision retroactively. *Bejarano v. State*, 146 P.3d 265 (Nev. 2006). Nevada now seeks to reimpose the death penalty on Farmer, using different statutory aggravating circumstances. Farmer contends that to impose the death penalty a second time, albeit based on aggravating circumstances different than those used in the first trial, would violate his right under the Fifth Amendment's Double Jeopardy Clause not to be "twice put in jeopardy of life or limb." U.S. Const. amend. V. We hold that Farmer's double jeopardy rights would not be violated by the state again seeking a death sentence based on aggravating circumstances different from those found and used by the sentencer to impose the first death penalty sentence.

I.

Farmer committed a series of terrible, random crimes in Nevada in the early 1980s. In January 1982, Farmer killed Thomas Kane, a man whose car Farmer had stolen. Then, Far-

mer robbed and killed a Nevada taxidriver named Greg Gelunas. Farmer fled to Florida, where he was arrested and extradited to Nevada.

Upon his return to Nevada, Farmer faced several prosecutions. In July 1982, Farmer was convicted in Nevada state court of armed robbery and second degree kidnapping with use of a deadly weapon in relation to an incident, known as the Cobb robbery, that preceded both the Kane and Gelunas murders. In February 1983, Farmer was convicted of first degree murder and possession of a stolen vehicle in relation to the Thomas Kane incident.

In March 1984, Farmer pleaded guilty to the Gelunas charges of first degree murder with use of a deadly weapon (a knife) and robbery with use of a deadly weapon. The state filed a notice of intent to seek the death penalty for the Gelunas murder. In its notice, the state sought the death penalty on the basis of the following aggravating circumstances listed in the applicable Nevada statute:[1] 1) the Gelunas murder was committed by a person who was previously convicted of another murder or of a felony involving the use or threat of violence to the person of another—specifically, the Cobb robbery (hereinafter, the "prior conviction aggravating circumstance"); 2) the Gelunas murder was committed by a person who was engaged, or was an accomplice, in the commission of or an attempt to commit robbery and burglary (hereinafter the "felony murder aggravating circumstances"); 3) the Gelunas murder involved torture, depravity of mind, or the mutilation of the victim; and 4) the Gelunas murder was committed by a person under sentence of imprisonment.

Under then-existing Nevada law, the capital sentencing proceeding occurred before a three-judge panel.[2] *See* Nev.

---

[1]Nev. Rev. Stat. 200.033 (1985).

[2]Nevada's procedure for capital sentencing in effect in 1984 would today be considered unconstitutional, because *Ring v. Arizona* held that

Rev. Stat. 175.552 (1985). After presenting the state's case at the penalty hearing, the prosecutor suggested to the court that "in [his] opinion" the prior conviction aggravating circumstance (notice of intent #1, above) probably did not apply because, even though the crimes leading to those convictions had occurred prior to the Gelunas murder, the actual convictions in the Cobb robbery (July 1982) and the Kane murder (February 1983) were not entered until *after* the Gelunas murder (January 1982). However, the prosecutor did not remove that charge, stating that "His Honors can determine that for theirselves [*sic*]."**³** The prosecutor also expressed some reservations about the applicability of the "torture, depravity of mind, or mutilation" (notice of intent #3, above) and "under sentence of imprisonment" (notice of intent #4, above) aggravating circumstances, but those aggravating circumstances were nonetheless submitted to the three-judge panel for determination.

After deliberating, the sentencing panel found two aggravating circumstances beyond a reasonable doubt, both of which were felony murder aggravating circumstances (notice of intent #2, above): (1) the Gelunas murder had been committed during the commission of a robbery, and (2) the Gelunas murder had been committed during the commission of a burglary. The panel found no mitigating circumstances

---

the Sixth Amendment requires aggravating circumstances, in a murder case in which the death penalty may be imposed, to be found by a jury. 536 U.S. 584, 609 (2002). However, the Supreme Court later held that *Ring* was not to be applied retroactively. *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004).

**³**In 1985, after the events at issue here, the Nevada Supreme Court clarified that the relevant time trigger for the "prior conviction aggravating circumstances" was that the prior felony convictions had to occur by "the time of the introduction of that evidence in the penalty phase of the present proceeding," and therefore did not have to be final at the time of the commission of the murder being prosecuted. *Gallego v. State*, 711 P.2d 856, 864 (Nev. 1985). As we discuss below, that meant that Farmer's prior convictions could indeed have been considered by the sentencer.

and imposed the death penalty. The sentencing panel's written decision is silent as to any conclusions or findings by the panel with respect of the remaining aggravating circumstances submitted by the prosecution.

Farmer's convictions and sentence were upheld on direct appeal by the Nevada Supreme Court, and years of post conviction proceedings followed. Then, in 2004, the Nevada Supreme Court decided *McConnell v. State*, 102 P.3d 606 (Nev. 2004), which held that it was "impermissible under the United States and Nevada Constitutions to base an aggravating circumstance in a capital prosecution on the felony upon which a felony murder is predicated." *Id.* at 624.[4] The Nevada Supreme Court subsequently determined that *McConnell* applied retroactively. *Bejarano v. State*, 146 P.3d 265, 268 (Nev. 2006). Farmer petitioned in state court for vacatur of his death sentence on the grounds that the sole aggravating circumstances found by the sentencing panel—two felony murder aggravating circumstances—were constitutionally impermissible circumstances on which to base a death sentence. The state conceded Farmer was entitled to relief, and his death sentence was vacated.

One month later, in the Nevada trial court, the state filed a new notice of intent to seek the death penalty which, as the state describes it, "does not add any additional aggravating circumstances to those identified in the original notice," but merely "provide[s] greater specificity . . . to the original notice." The renewed notice charges Farmer with three prior conviction aggravating circumstances: that 1) "the murder was committed by a person who was previously convicted of another murder," citing the conviction arising from the Kane

---

[4]In *McConnell*, the Nevada Supreme Court held that allowing the imposition of a death sentence based solely on the presence of a felony murder aggravator did not " 'genuinely narrow the class of persons eligible for the death penalty' " and therefore was unconstitutional. 102 P.3d at 620 (quoting *Zant v. Stephens*, 462 U.S. 862, 877 (1983)).

murder; 2) "the murder was committed by a person who was previously convicted of a felony involving the use or threat of violence to the person of another," citing a robbery conviction arising from the Cobb crime; and 3) "the murder was committed by a person who was previously convicted of a felony involving the use or threat of violence to the person of another," citing a kidnapping conviction arising from the Cobb crime.

Farmer filed a motion to strike the state's amended notice, contending that a retrial on the same aggravating circumstances contained in the original notice would violate the Double Jeopardy Clause. Farmer contended that, since the original three-judge sentencing panel found only the murder-committed-during-a-felony aggravating circumstances beyond a reasonable doubt, it had impliedly acquitted him of all other aggravating circumstances laid in the death penalty notice used in the 1984 trial. Since the state cannot re-litigate facts already decided by a factfinder, and since the sole aggravating circumstances found in 1984 were invalid, Farmer contended that he could no longer be subjected to the death penalty.

The state trial court denied the motion without opinion. On appeal, the Nevada Supreme Court affirmed in a brief opinion. In so doing, the Nevada Supreme Court stated that "Farmer's original penalty hearing did not result in an acquittal of the death penalty, and only due to a misconstruction of the law did the sentencing panel decline to consider the same prior-violent-felony aggravating circumstances upon which the state relies in pursuing the death penalty in the new penalty hearing." The Nevada Supreme Court did not explain how the original sentencing panel had misconstrued the law on this issue, but the Nevada Supreme Court presumably referred to the question whether the sentencing panel could have considered prior conviction aggravating circumstances in Farmer's case. As explained above at note 3, at the time of Farmer's sentencing, Nevada law was unsettled as to whether qualifying previous convictions had to be rendered and final

before the subject murder was committed or merely before sentencing. In 1985, however, the Nevada Supreme Court clarified that the relevant time trigger was that the prior felony convictions had to occur by "the time of the introduction of that evidence in the penalty phase of the present proceeding." *Gallego v. State*, 711 P.2d 856, 864 (Nev. 1985). The *Gallego* decision, which was issued after the three-judge sentencing panel's decision in this case, meant that Farmer's prior convictions in fact could have been considered by Farmer's original sentencing panel, for all such convictions had been rendered and were final before Farmer was sentenced for his murder of Gelunas.

Following the Nevada Supreme Court's decision, Farmer filed a petition for habeas corpus in federal district court under 28 U.S.C. § 2241. The district court denied relief. Farmer timely appealed, and we now affirm.

## II.

Because Farmer is in custody under a sentence of life in prison but attacks a sentence which has not yet been imposed —the possibility of another death sentence—this petition was properly filed under 28 U.S.C. § 2241, and the state court's decision is reviewed de novo. *Harrison v. Gillespie*, 640 F.3d 888, 896 (9th Cir. 2011) (en banc), *cert. pet. filed as* No. 11-168. The state contends that the standard of review issue in *Harrison* was incorrectly decided and the state court's decision is entitled to the more deferential standard of review created by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and codified at 28 U.S.C. § 2254(d), but, for now, we are bound by *Harrison*. In any event, because we affirm the denial of habeas on de novo review, the outcome would necessarily be the same even under a more deferential standard.[5]

---

[5]In a footnote, the state also contends that Farmer should be "required to comply with the procedural rules applicable to habeas petitions under

III.

This case turns on the legal significance of the three-judge sentencing panel's silence as to the prior conviction aggravating circumstances charged by the prosecution in 1984, but not found by the three-judge panel. If that silence means that Farmer was "impliedly acquitted" of these "elements" of capital murder, as Farmer contends, then another attempt to procure a death sentence would be barred by the Double Jeopardy Clause. If there was no such implied acquittal, then the state may proceed in its second attempt to seek a death sentence. The question is novel in this circuit. We hold that the sentencing panel's silence as to certain aggravating circumstances in the 1984 death sentence did not "impliedly acquit" Farmer of those aggravating circumstances. Therefore, the state constitutionally may attempt once again to impose the death penalty, if it decides that justice so requires.

A.

**[1]** The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const.

---

28 U.S.C. § 2254." The state argued below that Farmer failed to comply with some of these requirements, such as the statute of limitations, exhaustion, and the prohibition against second or successive petitions, but the district court did not rule on these arguments. The state tells us that it "expressly state[s] that [it] do[es] not waive any of AEDPA's procedural requirements."

The state's supposed "express statement" of preservation does it no good. This court "review[s] only issues which are argued specifically and distinctly in a party's opening brief"; the court does not "manufacture arguments . . . , and a bare assertion does not preserve a claim." *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994). Because the state does not make any arguments on appeal as to why the petition may be barred on the basis of these "procedural requirements," those arguments are in fact waived for the purposes of this appeal, and we address only the core double jeopardy question in this opinion.

amend. V. The protections of the Clause extend not only to questions of guilt or innocence but also to capital sentencing proceedings that operate "like [a] trial on the question of guilt or innocence" by "explicitly requir[ing] the jury to determine whether the prosecution has 'proved its case.' " *Bullington v. Missouri*, 451 U.S. 430, 444-46 (1981).

Farmer's "implied acquittal" theory was first described by the Supreme Court in 1957 in *Green v. United States*, 355 U.S. 184 (1957). In that case, the defendant was charged with both first-degree murder and the lesser included offense of second-degree murder. *Id.* at 186. At his first trial on charges of both degrees of murder, the jury found the defendant guilty only of second-degree murder but "was silent on [the] charge" of first-degree murder. *Id.* The defendant appealed, and the appellate court reversed his conviction. *Id.* On retrial, the prosecution again charged first degree murder, but this time the jury convicted on that charge, and the defendant was sentenced to death. *Id.* The Supreme Court held that the outcome of the first trial was "an implicit acquittal on the charge of first degree murder." *Id.* at 190. The Court noted that "the jury was dismissed without returning any express verdict on that [first-degree] charge and without [the defendant's] consent." *Id.* at 191. But because the jury "was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so . . . [the defendant's] jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense." *Id.*

In a later trio of double jeopardy cases, the Supreme Court addressed double jeopardy consequences in cases of capital sentencing. In *Bullington v. Missouri*, 451 U.S. 430 (1981), the Court held that a defendant *acquitted* of the death penalty by a sentencing jury following the defendant's first trial may not again be subjected to the death penalty at retrial, regardless the reason for the acquittal. *Id.* at 446. Three years later, in *Arizona v. Rumsey*, 467 U.S. 203 (1984), the Supreme

Court extended these double jeopardy protections to sentencing decisions made by *judges* after trial-like procedures, which procedures included the requirements that evidence be submitted according to "the usual rules of evidence" and that the state must prove the existence of any aggravating circumstance beyond a reasonable doubt. *Id.* at 210. The *Rumsey* Court also held that the fact that the sentencing tribunal in that case had acquitted on the basis of a legal misunderstanding "does not change the double jeopardy effects of a judgment that amounts to an acquittal on the merits." *Id.* at 211.

The Supreme Court limited *Bullington* and *Rumsey* in *Poland v. Arizona*, 476 U.S. 147 (1986), the case most analogous to Farmer's. In *Poland*, the defendants were convicted of first-degree murder. *Id.* at 149. The trial judge alone imposed the death sentence—a sentencing procedure which, as mentioned above at note 2, was valid at the time, but is no longer constitutional after *Ring v. Arizona*. The prosecution in *Poland* had charged two aggravating circumstances, but the trial judge found only one present: that the murder was committed in an "especially heinous, cruel or depraved manner." *Id.* The trial judge expressly found that the other charged aggravating circumstances—that the crime was committed "as consideration for the receipt . . . of [something] of pecuniary value"—was unavailable to the state as a matter of law because "the legislative intent was to cover a contract killing," but the *Poland* murders occurred during a bank robbery. *Id.* (internal quotation marks omitted). The Arizona Supreme Court reversed the death sentence because there was insufficient evidence to find the "heinousness" aggravating circumstance, but it also held that the trial court had misconstrued the "pecuniary gain" aggravating circumstance, which in fact was "not limited to situations involving contract killings." *Id.* at 150. On remand from the Arizona Supreme Court's decision, the *Poland* defendants were again subjected to a death penalty sentencing hearing and were re-sentenced to death after the trial judge this time found the pecuniary gain aggravator, properly construed, was present.

The Supreme Court held the Double Jeopardy Clause was not violated by this procedure and affirmed the death sentence. *Id.* at 157. In so doing, the Court stated that *Poland* differed from *Bullington* and *Rumsey* because "[a]t no point during [the defendants'] first capital sentencing hearing and appeal did either the sentencer or the reviewing court hold that the prosecution had failed to prove its case that petitioners deserved the death penalty." *Id.* at 154 (internal quotation marks omitted). The Court rejected the view that "the capital sentencer should be seen as rendering a series of mini-verdicts on each aggravating circumstance." *Id.* at 153 n.3.

**[2]** This trio of capital double jeopardy cases sets the following boundaries: *Bullington* and *Rumsey* show that when, in the first sentencing proceeding, a capital sentencer acquits entirely of the death penalty for any reason, the state may never again seek the death penalty. By contrast, *Poland* shows that where the initial sentencer in fact imposes the death penalty, the state can again seek the death penalty on another basis even if the sole basis for the initial death sentence was held invalid.

### B.

**[3]** Ours is a situation virtually identical to that in *Poland*: the original capital sentencer imposed the death penalty, and the two aggravating circumstances found by that sentencer as a basis for the sentence were later invalidated. The state now seeks to reimpose the death sentence, but based on different aggravating circumstances. Because Farmer had a death sentence imposed initially, the analysis is governed by *Poland* and not *Bullington* and *Ramsey*, and the Double Jeopardy Clause is no bar to the state's renewed attempt to impose the death penalty.

Farmer's attempt to distinguish *Poland* is energetic but ultimately unavailing. Farmer notes that, in *Poland*, the state trial court made a legal ruling that the "pecuniary gain" aggravat-

ing circumstance was not applicable, which legal ruling the Arizona Supreme Court held to be erroneous. 476 U.S. at 149-50. On remand, the sentencer of the *Poland* defendants, now applying the correct Arizona law regarding what constitutes a "pecuniary gain" aggravating circumstance, found that it did apply, and reimposed the death penalty on that basis. *Id.* Farmer contends that his situation is distinguishable: neither his state trial judge nor his three-judge sentencing panel made any *legal* ruling on the record that the prior conviction aggravating circumstances did not apply in his case. Rather, Farmer states that, in its role as fact-finder, the three-judge panel refused to find *factually* the non-felony aggravating circumstances, which did not involve felony murder elements, without explanation. He contends that these omissions amounted to an implied acquittal of those other aggravating circumstances charged, including the prior conviction aggravating circumstances.

But Farmer's account of why the original three-judge panel failed to find the prior conviction aggravating circumstances is contradicted by the opinion of the Nevada Supreme Court, an opinion to which we must defer on both matters of fact and of state law.[6] *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). The Nevada Supreme Court in this case stated that "only due to a misconstruction of the law did the sentencing panel decline to consider the same prior-violent-felony aggravating circumstances upon which the State relies in pursuing the death penalty in the new penalty hearing." Thus, the Nevada Supreme Court tells us that the three-judge sentencing panel

---

[6]Even without according the deference required by AEDPA, state court findings of facts are entitled to a "presumption of correctness." *Hoyle v. Ada Cnty.*, 501 F.3d 1053, 1059 (9th Cir. 2007). Further, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, whether the Nevada Supreme Court's determination that the original sentencing panel's silence as to the prior conviction aggravating circumstances was due to a legal misunderstanding is characterized as a finding of fact or an interpretation of state law, we defer to it.

was silent on the prior conviction aggravating circumstances (notices of intent #1 and #4, above) because the sentencing panel declined to consider those prior convictions in light of the legal uncertainty surrounding them—an uncertainty later clarified by the Nevada Supreme Court's *Gallego* decision in a way that allows the state to use those aggravating circumstances for sentencing purposes in this case. This case is therefore indistinguishable from *Poland*. Hence, we need not decide whether the distinction Farmer attempts to draw between acquittals for "factual" reasons or "legal" reasons has any legal significance. His case does not present that issue.

## C.

In the alternative, Farmer asks us to hold that *Poland* is no longer good law after *Ring v. Arizona*, 536 U.S. 584 (2002), which held that the aggravating circumstances required to be found to impose a death sentence must be found by a jury. *Id.* at 609. Farmer rightly observes that, after *Ring*, the presence of aggravating circumstances must be interpreted as an "element" of the distinct crime of capital murder. Farmer contends that, so construed, the panel's failure to return a verdict on the prior conviction aggravating circumstances *must* be interpreted as: " 'We find the defendant not guilty of [murder plus the prior conviction aggravating circumstances] but guilty of the [murder plus felony murder aggravating circumstances].' " Appellant's Br. 16 (quoting *Green*, 355 U.S. at 191) (brackets in brief). This interpretation is required, Farmer claims, because *Ring* and its progeny "represent a fundamental doctrinal shift" away from the analysis in *Poland*. *Id.* at 19. If this is the proper interpretation, Farmer contends that the Double Jeopardy Clause would bar retrial.

To be sure, the aspect of *Poland* that allows for aggravating circumstances to be found by the trial judge and not a jury is, today, an anachronism. But while the Supreme Court has acknowledged that the understanding of sentencing contained in the *Bullington/Rumsey/Poland* line of cases has been

altered by more recent Sixth Amendment decisions, the Court's only decision since *Ring* to cite *Poland* reaffirmed that under "the *Bullington* line of cases . . . the touchstone for double-jeopardy protection in capital-sentencing proceedings is whether there has been an 'acquittal.' " *Sattazahn v. Pennsylvania*, 537 U.S. 101, 109 (2003). The core of *Poland* thus remains valid: if there was no acquittal of the death penalty, a sentence of death may be reimposed on grounds valid at the time of original sentencing. In any event, neither *Poland*'s core principle nor the holding itself has been overruled by the Supreme Court, and "it is [the Supreme] Court's prerogative alone to overrule one of its precedents." *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997). We follow *Poland*, as we must.

**[4]** Moreover, *Ring v. Arizona* and subsequent cases have not altered the legal significance of capital aggravating circumstances in the drastic way that Farmer contends they have. Under then-existing Nevada law, and as is still the case today, the capital sentencer considers whether particular mitigating and aggravating circumstances exist. Nev. Rev. Stat. 175.554(2) (1985). The sentencer may then impose a sentence of death "only if it finds at least one aggravating circumstance and further finds that there are no mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances found." *Id.* Thus, in cases such as Farmer's, where no mitigating circumstances were found to exist, the presence of any aggravating circumstance would provide an independent and sufficient ground for imposing a sentence of death. It would therefore be a logical leap to assume that a sentencer's silence on a second, third, or fourth charged aggravating circumstance means that the sentencer has "acquitted" the defendant of those aggravating circumstances. The sentencer may well have simply refrained from considering the additional aggravating circumstances, since to do so would have been unnecessary to the outcome. Indeed, according to the Nevada Supreme Court, that is precisely what occurred here.

**[5]** The logic of *Ring* and its progeny do not change this analysis. Those cases do not force us to conclude that the prior conviction aggravating circumstances are "lesser-included element[s] of capital murder, and by not finding their existence, the three-judge panel impliedly acquitted Mr. Farmer of this element." Appellant's Br. 17. Instead, the section of the Court's opinion in *Ring* cited by Farmer supports the contrary conclusion. In *Ring*, the Supreme Court said that because "enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' the Sixth Amendment requires that they be found by a jury." *Ring*, 536 U.S. at 609 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 494 n.19 (2000)). Notice that the Court referred to "aggravating factors"—with "factors" in the plural—as "*an element* of a greater offense." This implies that it is the outcome of a sentencer's balancing of independent aggravating and mitigating circumstances that constitute the *one* element of the *greater* offense of capital murder. That concept contradicts Farmer's idea that a sentencer's decisions as to the existence of each aggravating circumstance are done as separate mini-trials and that silence as to any charged aggravating circumstance implies acquittal on that aggravating circumstance. Thus, when a sentencer has already found the presence of an aggravating circumstance sufficient to impose a death sentence, its silence as to other aggravating circumstances does not carry with it any implication of rejection of the unmentioned aggravating circumstances. Here, silence is just silence.

\* \* \*

**[6]** Under *Poland*, the outcome of this case is straightforward. Farmer was not acquitted of a death sentence in his initial capital sentencing proceedings, and so the state's renewed attempt to seek a death sentence on grounds present in his first sentencing, but neither accepted nor rejected, is not barred by the Double Jeopardy Clause. Despite Farmer's contentions, nothing in subsequent Supreme Court jurisprudence

alters this conclusion. We therefore AFFIRM the district court's denial of Farmer's habeas petition.