**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

OKLEVUEHA NATIVE AMERICAN
CHURCH OF HAWAII, INC.; MICHAEL
REX MOONEY, AKA Raging Bear,
   *Plaintiffs-Appellants,*

    v.

ERIC H. HOLDER Jr., Attorney
General; MICHELE LEONHART, as
Acting Administrator of the U.S.
Drug Enforcement Administration;
FLORENCE T. NAKAKUNI, U.S.
Attorney for the District of
Hawaii,
   *Defendants-Appellees.*

No. 10-17687

D.C. No.
1:09-cv-00336-
SOM-BMK

OPINION

Appeal from the United States District Court
for the District of Hawaii
Susan Oki Mollway, Chief District Judge, Presiding

Argued and Submitted
February 15, 2012—Honolulu, Hawaii

Filed April 9, 2012

Before: Alfred T. Goodwin, Stephen S. Trott, and
Mary H. Murguia, Circuit Judges.

Opinion by Judge Murguia

**COUNSEL**

Michael Andrew Glenn, Low Cost Legal Services, Honolulu, Hawaii, for the appellants.

James C. Luh, Lowell V. Sturgill, Jr., and Mark Stern, Department of Justice, Washington, DC, and Derrick K. Watson, Office of the United States Attorney, Honolulu, Hawaii, for the appellees.

**OPINION**

MURGUIA, Circuit Judge:

Plaintiffs Oklevueha Native American Church of Hawaii, Inc. ("Oklevueha") and Michael Rex Mooney a.k.a. Raging Bear appeal the district court's dismissal of their complaint and judgment in favor of Defendants the U.S. Attorney General, the Administrator of the U.S. Drug Enforcement Administration ("DEA"), and the U.S. Attorney for the District of Hawaii (collectively, "Government"). Plaintiffs' action seeks declaratory and injunctive relief barring the Government from enforcing the Controlled Substances Act ("CSA") against them and for return or compensation for marijuana taken by the Government. Plaintiffs allege that they consume marijuana as a "sacrament/eucharist" in their religious ceremonies, and that their use is protected by the First Amendment and the Religious Freedom Restoration Act ("RFRA"). The district court dismissed the claims for declaratory and injunctive relief on ripeness grounds. It also dismissed the claim for the return of, or compensation for, the seized marijuana because the marijuana had been destroyed and monetary damages are not available under RFRA. We affirm in part and reverse and remand in part.

## I.   Factual and Procedural Background

Plaintiff Oklevueha Native American Church of Hawaii, Inc. is a 250-member independent chapter of the Native American Church ("NAC"). NAC has an estimated 500,000 national members in 100 branches throughout 24 states. Plaintiff Michael Rex "Raging Bear" Mooney is the founder, president, and medicine custodian of the Oklevueha chapter. He is of Seminole Native American ancestry, and is an "authorized Spiritual Leader," or "medicine man."

According to Plaintiffs, NAC is an earth-based healing religion, the primary purpose of which is to "administer Sacra-

mental Ceremonies." These ceremonies involve the consumption of drugs; indeed, Plaintiffs explain that the church "only exists to espouse the virtues of, and to consume, entheogens." NAC members' religious use of peyote is exempted from the prohibitions of the CSA, *see* 21 C.F.R. § 1307.31,[1] but there is no such exemption for marijuana. Plaintiffs explain that marijuana use is a crucial part of NAC tradition and that members consume marijuana as a sacrament and eucharist in their religious ceremonies and rites, in addition to or as a substitute for peyote, which is their "primary sacrament/great-medicine of choice." All 250 Oklevueha members consume marijuana in religious ceremonies. Members use marijuana to enhance spiritual awareness and facilitate direct experience of the divine. Mooney uses marijuana daily, and other Oklevueha members use marijuana in "sweat" ceremonies, which occur twice a month at various private locations in Oahu and are only open to NAC members.

In June 2009, federal law enforcement officers in Hawaii seized from FedEx one pound of marijuana that was addressed to Mooney and intended for Oklevueha use. The marijuana was turned over to the Honolulu Police Department and later destroyed. The seized marijuana was worth approximately $7,000. Plaintiffs do not allege that Mooney or any Oklevueha member has been prosecuted or threatened with prosecution in connection with the seizure or in relation to any other procurement or use of marijuana.

Despite the nonexistence of any criminal charges, Plaintiffs claim that they fear for their ability to continue to cultivate, consume, possess, and distribute marijuana for religious purposes without being branded criminals and made to face fines and imprisonment. In support of this fear, they point to a DEA

---

[1]In 1994, Congress extended the peyote exemption to all members of every recognized Indian Tribe. *See* 42 U.S.C. § 1996a(b)(1).

raid in March 2010 on another Hawaii-based church that purports to use marijuana as a religious sacrament.

Plaintiffs assert seven claims: (1) violation of RFRA, 42 U.S.C. §§ 2000bb-2000bb-4; (2) violation of the American Indian Religious Freedom Act, 42 U.S.C. § 1996; (3) violation of the right to equal protection under the Fifth and Fourteenth Amendments; (4) violation of the First Amendment right to freedom of religion; (5) theft and/or conversion of one pound of marijuana; (6) declaratory judgment that the Government's seizure of the marijuana was unlawful and that the CSA may not be enforced against their possession, cultivation, provision, and distribution of marijuana for personal religious use; and (7) injunctive relief ordering the return of the seized marijuana, or its monetary value, and prohibiting the Government from arresting or prosecuting Oklevueha members for marijuana use or seizing their marijuana.

The district court granted in part and denied in part the Government's first motion to dismiss Oklevueha's First Amended Complaint. It dismissed the claims for declaratory and injunctive relief related to future use of marijuana ("the preenforcement claims") and the tort claims, but not the claim for return of, or compensation for, the seized marijuana under RFRA. The court dismissed the preenforcement claims on ripeness grounds, concluding that Plaintiffs' claims did not satisfy the constitutional ripeness test for preenforcement challenges and that even if they did, prudential considerations also warranted dismissal. The court further held that Oklevueha lacked associational standing to assert the claims for prospective relief. Plaintiffs' claims for theft and conversion of the marijuana were also dismissed because they are barred by sovereign immunity. Then in a subsequent order, the district court dismissed Plaintiffs' remaining claims related to the seizure of the marijuana. With respect to Plaintiffs' request for compensation, the court explained that it could not order the Government to return something it does not have, and that it could not award money damages because RFRA does not

unambiguously waive sovereign immunity to authorize money damages.

## II.   Discussionm

We review the district court's grant of a motion to dismiss *de novo*. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). We accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to Plaintiffs. *Id.* However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011).

## A.   The Preenforcement Claims

Plaintiffs challenge the district court's determination that their claims for prospective relief are not ripe. The Constitution limits Article III federal courts' jurisdiction to deciding "cases" and "controversies." U.S. Const. art. III, § 2. Ripeness is one component of the Article III case or controversy requirement. The "basic rationale" of the ripeness requirement is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). "The ripeness inquiry contains both a constitutional and a prudential component." *Portman v. Cnty of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993). We consider each in turn.

### 1.   Constitutional Ripeness

**[1]** The "Constitution mandates that prior to our exercise of jurisdiction there exist a constitutional 'case or controversy,' that the issues presented are 'definite and concrete, not hypothetical or abstract.' " *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (quoting *Ry Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)). However, arrest is not necessarily a prerequisite for

an individual to challenge the applicability of a criminal statute.

> When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (internal quotation marks omitted).

**[2]** To bring such a "preenforcement claim," we require plaintiffs to allege a "genuine threat of imminent prosecution." *Thomas*, 220 F.3d at 1139 (internal quotation marks omitted). We consider: (1) whether the plaintiffs have articulated a "concrete plan" to violate the law in question; (2) whether the government has communicated a specific warning or threat to initiate proceedings; and (3) the history of past prosecution or enforcement under the statute. *Id.*

In reviewing these factors, we find that they do not apply easily to the unique circumstances of Plaintiffs' claims. The "genuine threat" analysis presumes that no enforcement has previously occurred, and therefore ascertains the likelihood of future enforcement. In contrast, the FedEx seizure was an enforcement of the CSA against Plaintiffs, mitigating the relevance of a hypothetical future-enforcement. Nonetheless, because Plaintiffs' claims are asserted for the first time in an action for prospective relief (and not in a criminal proceeding), we consider the familiar "preenforcement claim" ripeness analysis, while acknowledging its strained applicability to the unusual allegations before us.

The district court concluded that Plaintiffs failed to sufficiently allege a "concrete plan" to violate the CSA because

the complaint does not state exactly how, where, and in what quantities Plaintiffs intend to consume marijuana, and does not specify how they intend to cultivate or acquire, store, and distribute marijuana. We disagree that the complaint must contain these factual allegations and conclude that Plaintiffs have sufficiently alleged a concrete plan.

**[3]** According to Plaintiffs, they have used marijuana in violation of the CSA countless times, and plan to continue to do so. We have explained that the "concrete plan" element of the genuine threat inquiry is satisfied where plaintiffs had "more than a 'concrete plan' " to violate the laws at issue because they "actually did violate them on a number of occasions." *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 773 (9th Cir. 2006); *see also Jacobus v. Alaska*, 338 F.3d 1095, 1105 (9th Cir. 2003) (holding that challenge to validity of campaign finance laws was ripe because "[p]laintiffs have gone far beyond the requirement that they articulate a concrete plan to violate the law, and instead have actually engaged in the illegal behavior at issue."). Plaintiffs allege that Mooney violates the CSA daily by consuming marijuana, and that other members of Oklevueha violate the law at semi-monthly sweats, in addition to any other usages. They further allege that Mooney and Oklevueha members have no plan to stop their consumption. Taking as true the facts alleged, Plaintiffs are currently violating and plan to continue to violate the CSA by purchasing and consuming marijuana. Accordingly, Plaintiffs' allegations satisfy the concrete plan requirement.

The second component of a genuine threat is whether the government has communicated a specific warning or threat to initiate proceedings. The district court found that Plaintiffs had not adequately alleged a specific threat of prosecution because the complaint lacked allegations of any threat or warning from federal authorities or that Plaintiffs intended to continue to bring in marijuana in a way likely to be noticed by federal drug authorities.

The district court is correct that Plaintiffs do not allege any threat of prosecution related to Plaintiffs' marijuana consumption. Plaintiffs have never been arrested in connection with their marijuana consumption, nor has there been another seizure of their drugs in the more than two and a half years that have elapsed since the 2009 FedEx seizure. Moreover, the Government's lawyer clarified at oral argument that the seizure at issue was in a response to a call from FedEx regarding Plaintiffs' package, and was not the result of any active Government investigation. The Government's lawyer further explained that to his knowledge, neither Mooney nor Oklevueha is the target of any current investigation. Additionally, the Government's decision to destroy the marijuana seized in 2009 without further investigation may give some insight into its enforcement priorities, which at this time apparently do not include Plaintiffs.

**[4]** We conclude, however, that the district court's focus on future prosecution is inapposite. Plaintiffs need not allege a threat of future prosecution because the statute has already been enforced against them. When the Government seized Plaintiffs' marijuana pursuant to the CSA, a definite and concrete dispute regarding the lawfulness of that seizure came into existence. *See Ry Mail Ass'n*, 326 U.S. at 93 (stating that a justiciable case or controversy must present a definite and concrete dispute). This case is unique in that unlike most enforcements of criminal statutes, the seizure did not result in a criminal proceeding that could have afforded Plaintiffs the opportunity to assert their constitutional and statutory challenges to the enforcement of the CSA against them. But it does not follow that because this enforcement and seizure of property did not provide Plaintiffs a process in which to raise their claims, those claims are not now ripe. We require a "threat of prosecution" to ensure that the plaintiff challenging a statute can "demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt*, 442 U.S. at 298. In this case, that injury has

already occurred, thereby eliminating any concerns that Plaintiffs' fear of enforcement is purely speculative.[2]

[5] For the same reason Plaintiffs need not demonstrate a threat of future prosecution under these facts, we conclude that Plaintiffs need not establish the third prong of the "genuine threat of prosecution" inquiry, the history of enforcement of the statute. In other words, we need not rely on enforcement of the statute against other groups in determining whether Plaintiffs are likely to suffer a similar fate in the future, because the CSA has already been enforced against Plaintiffs through the seizure of their marijuana. This is not the kind of "abstract disagreement" that the ripeness doctrine prevents courts from adjudicating. Plaintiffs' "stake in the legal issues is concrete rather than abstract." *Colwell v. Dep't of Health & Human Servs*, 558 F.3d 1112, 1123 (9th Cir. 2009). A non-speculative case and controversy exists regarding Plaintiffs' entitlement to possess and consume marijuana for religious reasons.

## 2.  Prudential Ripeness

[6] "The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.' " *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). The question of prudential ripeness requires us to first consider the fitness of the issues for judicial review, fol-

---

[2]We are also cognizant of the possibility that further seizures from a private shipping service could occur at any time, without ever resulting in a criminal prosecution. The Government maintains it is not investigating Plaintiffs, but a shipping company could again alert the Government of what it deems to be a suspicious package, and the Government might again dispose of its contents. We do not think Plaintiffs should be forced to accept the possibility of continued seizure of marijuana to which they believe they are constitutionally entitled because they cannot show a threat of criminal prosecution.

lowed by the hardship to the parties of withholding court consideration. *Colwell,* 558 F.3d at 1124. The district court held that the case is not fit for judicial review because the complaint contains no factual allegations describing how marijuana is consumed or acquired and, "for all the court knows," Plaintiffs might be planning to import thousands of pounds of marijuana to sell to anyone claiming a religious need. We disagree and conclude that Plaintiffs' preenforcement claims are fit for review.

**[7]** Courts have regularly declined on prudential grounds to review challenges to recently promulgated laws or regulations in favor of awaiting an actual application of the new rule. *See, e.g., Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164 (1967) ("We believe that judicial appraisal of these factors is likely to stand on a much surer footing in the context of a specific application of this regulation than could be the case in the framework of the generalized challenge made here."); *Nat'l Park Hospitality Ass'n,* 538 U.S. at 812 ("[J]udicial resolution of the question presented here should await a concrete dispute about a particular concession contract."); *Colwell*, 558 F.3d at 1128 ("If and when the parties are able to provide examples of the manner in which the HHS has used the Policy Guidance . . . we will be in a better position to determine whether the 2003 Policy Guidance functions as a substantive rule or as a general statement of policy."). This is not such a case. In contrast to cases in which the courts are left to hypothesize about how the law might be applied, Plaintiffs' claims arise from an enforcement action that has already occurred. The seizure of Plaintiffs' marijuana presents a "concrete factual scenario that demonstrates how the laws, as applied, infringe [Plaintiffs'] constitutional rights." *Thomas*, 220 F.3d at 1141.

We also disagree with the district court's conclusion that to present a case fit for review, Plaintiffs need to frame the scope of the injunctive relief they seek through allegations about Oklevueha's members' use, possession, cultivation, and dis-

tribution of marijuana. Such specific pleadings are not required to establish fitness for review, which requires only the existence of a "concrete factual situation." *San Diego Cnty Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996). The scope of any injunctive relief to which Plaintiffs might ultimately be entitled may be determined at a later phase of the litigation. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (holding that justiciability must be supported "with the manner and degree of evidence required at the successive stages of the litigation.").

Likewise, we are unpersuaded by the Government's assertion that Plaintiffs' request for prospective relief is unripe because Plaintiffs did not request an exception to the CSA from the DEA. *See* 21 C.F.R. § 1307.03 ("Any person may apply for an exception to the application of any provision of this chapter by filing a written request with the Office of Diversion Control, Drug Enforcement Administration, stating the reasons for such exception."). The Government argues that we should require Plaintiffs to exhaust this administrative remedy, because doing so would allow the DEA to apply its expertise to Plaintiffs' claim, possibly moot the case if the claim is granted, and help build a record for judicial review.

**[8]** We decline, however, to read an exhaustion requirement into RFRA where the statute contains no such condition, *see* 42 U.S.C. §§ 2000bb-2000bb-4, and the Supreme Court has not imposed one. Indeed, the Supreme Court has reviewed a RFRA-based challenge to the CSA without requiring that the plaintiffs first seek a religious use exemption from the DEA. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). In so doing, it recognized that RFRA "plainly contemplates that *courts* would recognize exceptions [to the CSA] — that is how the law works." *Id.* at 434.

**[9]** Because this is not an abstract disagreement but rather involves the application of well-developed law (including the

First Amendment right to religious freedom, RFRA and the CSA) to an existing case and controversy (the seizure of Plaintiffs' marijuana), we conclude Plaintiffs' claims are fit for review.

**[10]** As Plaintiffs' claims are fit for review now, we do not reach the second factor of the prudential ripeness inquiry — hardship to the parties in delaying review. Hardship serves as a counterbalance to any interest the judiciary has in delaying consideration of a case. *See Colwell*, 558 F.3d at 1129 ("[T]his hardship is insufficient to overcome the uncertainty of the legal issue presented in the case in its current posture."); *Municipality of Anchorage v. United States*, 980 F.2d 1320, 1326 (9th Cir. 1992) ("[M]ere potential for future injury does not overcome the interest of the judiciary in delaying review." (internal quotation marks omitted)). Because we can identify no interest in delaying review of Plaintiffs' claims, the hardship that would be imposed by any delay is not relevant. Accordingly, we find that Plaintiffs' claims should not be dismissed on prudential ripeness grounds.

### 3. Associational Standing

We turn next to the issue of associational standing. Oklevueha may bring suit on its members' behalf when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). The district court concluded that Oklevueha does not have associational standing to seek injunctive relief because the complaint does not allege details regarding each member's use of marijuana. We disagree.

**[11]** First, the members of Oklevueha would have standing to sue in their own right because, according to the complaint,

they all use marijuana as a regular and integral part of their religious practice. Therefore, the members are suffering "immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Id.* at 342. Second, the suit seeks to protect Oklevueha's members' use of marijuana in religious ceremonies, the administration of which Plaintiffs allege is the "sole purpose" of Oklevueha. Finally, the prospective relief that Plaintiffs seek does not require that individual Oklevueha members participate in this action. "If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). The district court's concerns about the details of injunctive relief may be addressed if the court ultimately awards Plaintiffs such a remedy. At this stage, what matters is that Plaintiffs' allegations are sufficient to establish Oklevueha's associational standing.

**[12]** Plaintiffs' claims for prospective relief arising from the Government's seizure of marijuana meet the constitutional requirements and prudential factors for ripeness, and Oklevueha has associational standing to assert the claims. The seizure of Plaintiffs' marijuana that has already occurred creates a justiciable case and controversy about Plaintiffs' constitutional and statutory entitlement to use marijuana for religious purposes. Adjudication of Plaintiffs' claims does not require that the court entangle itself in hypothetical scenarios or "abstract disagreements." *Abbott Labs.,* 387 U.S. at 148. Accordingly, we reverse the district court's dismissal of Plaintiffs' "preenforcement claims." Nothing in this opinion addresses the merits of the underlying claims. We remand the claims for prospective relief to the district court to consider the merits in the first instance.

### B. Claims for Return or Compensation for the Marijuana

Appellants seek return of, or compensation for, the seized marijuana under RFRA.[3] The district court denied this request, correctly observing that the marijuana was destroyed prior to Plaintiffs' request for its return in their First Amended Complaint, and the court cannot order the government to return something it does not have. The issue then is whether Plaintiffs may, pursuant to RFRA, obtain "compensation" for the destroyed drugs — i.e. money damages. The district court concluded that the government is immune from claims for money damages because RFRA does not unambiguously waive sovereign immunity to authorize money damages. We agree and hold that RFRA does not waive the federal government's sovereign immunity from damages.

[13] RFRA waives immunity from some forms of relief. Its judicial relief provision states: "A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c). This provision, however, does not define "relief," so the issue is whether the waiver extends to relief in the form of money damages. The United States may not be sued without its consent, and we strictly construe waivers of sovereign immunity, which must be "unequivocally expressed in the statutory text." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999) (internal citations omitted). To

---

[3]Plaintiffs also asserted tort claims for theft and conversion related to the seizure of the marijuana. The district court dismissed the tort claims, explaining that the Federal Tort Claims Act's waiver of immunity excludes claims related to the detention of property by law enforcement officers. Appellants do not raise their torts claims before this Court, and we therefore do not consider them. *See Farmer v. McDaniel*, 666 F.3d 1228, 1233 (9th Cir. 2012) ("[T]his court reviews only issues which are argued specifically and distinctly in a party's opening brief. . . ." (internal quotation marks and alterations omitted)).

show that the government is liable for awards of monetary damages, "the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

**[14]** The D.C. Circuit is the only other circuit court to have considered whether RFRA waives sovereign immunity for monetary damages. In *Webman v. Fed. Bureau of Prisons*, it held that RFRA does not authorize money damages. 441 F.3d 1022 (D.C. Cir. 2006). The Court explained that it is plausible to read RFRA's "appropriate relief" provision as covering money damages or, alternatively, as applying only to "equitable relief but not damages, given Congress's awareness of the importance of sovereign immunity and its silence in the statute on the subject of damages." *Id.* at 1026. Because the relief provision is susceptible to more than one interpretation, the Court could not "find an unambiguous waiver in language this open-ended and equivocal." *Id.*

Further, the Supreme Court recently interpreted identical "appropriate relief" language in the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-2(a). In *Sossamon v. Texas,* the Supreme Court held that by accepting federal funds, states do not consent to waive their immunity to suits for monetary damages under RLUIPA. 131 S. Ct. 1651 (2011). It explained that RLUIPA's express private cause of action, which is identical to the judicial relief provision in RFRA, "is not the unequivocal expression of state consent that our precedents require." *Id.* at 1658. The Supreme Court explained that "appropriate relief" does not clearly include money damages, but rather that the word "appropriate" "is inherently context-dependent." *Id.* at 1659 (citations omitted). The Court stated that "[t]he context here— where the defendant is a sovereign—suggests, if anything, that monetary damages are not 'suitable' or 'proper.'" *Id.* (citing *Fed. Mar. Comm'n v. S.C., State Ports Auth.*, 535 U.S. 743, 765 (2002)).

Although the Supreme Court in *Sossamon* considered claims against a state, rather than federal actors,[4] and was therefore guided by the Eleventh Amendment, the Court's interpretation of "appropriate relief" is also applicable to actions against federal defendants under RFRA. *See Sossamon*, 131 S.Ct at 1658 n.4 (explaining the overlapping analysis of state and federal sovereign immunity). Just like the identical language in RLUIPA, RFRA's authorization of "appropriate relief" is not an "unequivocal expression" of the waiver of sovereign immunity to monetary claims. *Lane*, 518 U.S. at 192. The provision could be read as authorizing only injunctive relief, and therefore "does not so clearly and unambiguously waive sovereign immunity to private suits for damages that we can 'be certain that the State in fact consents' to such a suit." *Sossamon,* 131 S. Ct. at 1658-59 (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 680 (1999)).

**[15]** Strictly construing the "appropriate relief" provision in favor of the government, we conclude that RFRA does not authorize suits for money damages. We therefore affirm the district court's dismissal of Plaintiffs' claims for compensation for the seized marijuana.[5]

## III.   Conclusion

We AFFIRM IN PART and REVERSE IN PART the dis-

---

[4]The Supreme Court held RFRA unconstitutional as applied to state and local governments because it exceeds Congress' power under § 5 of the Fourteenth Amendment. *City of Boerne v. Flores*, 521 U.S. 507 (1997). In contrast, RLUIPA, which was enacted pursuant to Congress' Spending Clause and Commerce Clause authority, does apply to the states. *Sossamon,* 131 S.Ct. at 1656 n.1 (declining to address whether the Commerce Clause or Spending Clause authorize Congress to address the alleged religious burden at issue in the case).

[5]We also agree with the district court that it cannot order the Government to purchase substitute marijuana because doing so would be an end run around the prohibition on money damages.

trict court's dismissal of Plaintiffs' claims. We AFFIRM the dismissal of the claims for return of, or compensation for, the seized marijuana. We REVERSE the dismissal of Plaintiffs' claims for declaratory and injunctive relief and REMAND for further proceedings consistent with this opinion.

The parties shall bear their own costs of appeal.

**AFFIRMED IN PART, REVERSED and REMANDED IN PART.**